Christine L. COTE, Trustee of the Cote Family Trust, The Cote Family Trust, and Christine L. Cote, Individually and as the Beneficiary of the Cote Family Trust, Appellants

v.

TEXCAN VENTURES II and Nunzio DeSantis, Appellees.

No. 05–07–01447–CV.

Court of Appeals of Texas, Dallas.

Nov. 26, 2008.

Timothy A. Duffy, Burleson Pate & Gibson, L.L.P., Dallas, for Appellants.

Robert Jason Bowles, Bowles & Crow, Albuquerque, Robert D. Cohen, Cohen & Zwerner, L.L.P., Dallas, for Appellees.

Before Chief Justice THOMAS and Justices WHITTINGTON and FRANCIS.

## OPINION

Opinion By Chief Justice THOMAS.

As part of an investment scheme, appellants transferred $1,000,000 to Stuart Kalb, a Texas attorney. Kalb disbursed a portion of the funds to appellees. Appellants sued, seeking to recover the funds from appellees through the imposition of a constructive trust. In one issue, appellants contend the trial court erred in denying their claim for relief because they were entitled, as a matter of law, to the imposi-tion of a constructive trust on the funds. We affirm the trial court's judgment.

### Background

In June 2004, appellants were approached by Curtis Peterson and Wade West of West Wing Financial, Inc. regarding an investment program that leveraged investors' funds to acquire government securities. According to West, the monthly return on appellants' investment would be between ten and thirty-two percent. Further, the invested funds would be kept in the trust account of an attorney, could not be withdrawn without appellants' consent, and would be available for withdrawal by appellants on seventy-two hours' notice. However, if appellants discussed the program with anyone, including employees of the bank where the funds were deposited, the government would discontinue the program and appellants could be liable for damages. West provided appellants with a notarized letter purportedly from Bank of America confirming the existence of Kalb's trust account and the alleged safeguards in place to prevent access by anyone other than appellants to the funds. The letter was actually forged by West.

Appellants agreed to invest in the program and, through two wire transfers on June 21, 2004 and June 25, 2004, sent $1,000,000 to Kalb's trust account. Prior to the transfers, Kalb's trust account contained $100.

Kalb had known West for approximately two years prior to the transfers and had been told by West to expect the money. West also provided Kalb with a purchase agreement representing appellants were purchasing property in Albuquerque, New Mexico from DW Development LLC, a Nevada limited liability company purportedly owned by West and Nunzio DeSantis, one of the appellees. West told Kalb the $1,000,000 from appellants was for the pur-

chase of the property and instructed Kalb to disburse $137,500 of the funds to De-Santis, $58,074 to Alicia Harper, $250,000 to West, and $500,000 to Texcan Ventures II, the other appellee. On June 29, 2004, Kalb obtained cashier's checks and disbursed the money pursuant to West's instructions. Kalb also disbursed $10,000 to himself pursuant to his fee agreement with West. In total, Kalb disbursed $955,574 of appellants' funds.

In July 2004, appellants received a $90,000 transfer that they assumed was the first month's return on their investment minus the agreed upon custodial fees. After failing to receive the next owed payment, appellants contacted Kalb and learned that Kalb had disbursed the funds. Kalb returned $21,706, representing the remaining balance in his trust account and his fee, to appellants. Appellants also received $50,000 from Curtis. However, appellants failed to recover approximately $836,000 of their funds.

■ The investment program sold by West was actually a Ponzi scheme.[1] De-Santis and Texcan were prior investors in the scheme under the same terms as appellants. DeSantis invested $3,000,000 with West in 2003 or 2004 and lost $1,739,500. Texcan invested $1,000,000 with West in October 2003 and lost $307,500. West was convicted of a federal crime and sentenced to 115 months' incarceration.·

Appellants sued West, West Wing Financial, Curtis, DeSantis, and Texcan seeking the return of the funds disbursed by Kalb. Appellants took a default judgment against West, West Wing Financial, and Curtis and proceeded to trial against DeSantis and Texcan. The trial court entered a take nothing judgment and this appeal ensued.

## Standard of Review

Appellants do not challenge the sufficiency of the evidence to support the trial court's findings of fact. Rather, appellants contend the trial court erred in denying their claim because they were entitled to a constructive trust on the funds appellees received as a matter of law. We review the trial court's conclusions of law de novo to determine whether the trial court drew the correct legal conclusions from the facts. *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996); *Landerman v. State Bar of Tex.*, 247 S.W.3d 426, 431 (Tex.App.-Dallas 2008, pet. denied). We must affirm the trial court's judgment if it can be sustained on any legal theory supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794–95 (Tex. 2002); *In re Guardianship of Fortenberry*, 261 S.W.3d 904, 910 (Tex.App.-Dallas 2008, no pet.).

## Application

■ A constructive trust is an equitable remedy created by the courts to prevent unjust enrichment. *Holmes v. Kent*, 221 S.W.3d 622, 628 (Tex.2007) (per cu-

---

1. A "Ponzi scheme" is an investment fraud wherein investors are enticed with the promise of extremely high returns or dividends over a very short period of time. *Gutierrez v. Cayman Islands Firm of Deloitte & Touche*, 100 S.W.3d 261, 266 n. 1 (Tex.App.-San Antonio 2002, pet. dism'd). Investors are paid "from monies obtained from later investors rather than from profits of the underlying business venture." *Goldstein v. Mortenson*, 113 S.W.3d 769, 773 n. 1 (Tex.App.-Austin 2003, no pet.) (quoting *Caldwell v. State*, 95 S.W.3d 563, 566 n. 1 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd)). The scheme takes its name from Charles Ponzi, who in the late 1920s was convicted and punished for fraudulent schemes he conducted in Boston. *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 838 n. 1 (Tex.2005). The scheme generally collapses when new investments dry up. *Id.* at 838.

riam) (quoting *Meadows v. Bierschwale,* 516 S.W.2d 125, 131 (Tex.1974)); *III Forks Real Estate, L.P. v. Cohen,* 228 S.W.3d 810, 817 (Tex.App.-Dallas 2007, no pet.). A constructive trust requires the person who holds title to property "to convey it to another, on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property." *Baker Botts, L.L.P. v. Cailloux,* 224 S.W.3d 723, 736 (Tex.App.-San Antonio 2007, pet. denied) (quoting *Talley v. Howsley,* 142 Tex. 81, 176 S.W.2d 158, 160 (1943)). To be entitled to a constructive trust on the funds disbursed to appellees, appellants were required to prove (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *III Forks Real Estate, L.P.,* 228 S.W.3d at 817. Whether to impose a constructive trust is within the trial court's discretion. *Id.*

■ The trial court concluded appellees and appellants were equally situated as victims of West's scheme, appellees were not unjustly enriched by receiving the funds, and equity, in the form of a constructive trust, should not intervene in the dispute. Appellants contend the trial court erred in denying them relief because, as a matter of law, a constructive trust was imposed on the funds for appellants' benefit and, as beneficiaries, they are entitled to recover the funds from appellees. The issue is whether any constructive trust imposed on appellants' money due to West's wrongdoing remained in effect after the funds were transferred to appellees.

■ When property subject to a constructive trust is transferred, the recipient of the property takes title to the property subject to the trust if (1) the recipient does not give consideration for the property or (2) the recipient has notice of the existence of the trust at the time of the transfer. *Binford v. Snyder,* 144 Tex. 134, 138–39, 189 S.W.2d 471, 473 (1945); *see Fitz-Gerald v. Hull,* 150 Tex. 39, 51, 237 S.W.2d 256, 262–63 (1951) (A court of equity can impose a constructive trust on property "in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust."); *Teve Holdings Ltd. v. Jackson,* 763 S.W.2d 905, 908 (Tex.App.-Houston [1st Dist.] 1988, no writ). Here, it is undisputed the funds appellees received were the funds appellants transferred to Kalb. However, the trial court found that appellees were not aware of West's fraud when they received the funds, were not involved in West's fraud, and were unaware of the source of the funds they received from West. Rather, appellees believed the funds were a partial repayment of the investments they had made with West. Therefore, appellees did not have notice the funds might be subject to a constructive trust.

Relying on *Pope v. Garrett,* 147 Tex. 18, 211 S.W.2d 559 (1948), appellants argue appellees failed to give consideration for the funds and, therefore, the funds they received remained subject to a trust. In *Pope,* Carrie Simons prepared a will devising her property to Claytonia Garrett. When Simons attempted to execute the will, two of her heirs forcibly prevented her from signing it. Simons died a short time later without executing the will, and her property passed to her heirs.

The Texas Supreme Court first determined a constructive trust was imposed on the property to prevent the heirs who stopped Simons from signing the will from inheriting. *Pope,* 147 Tex. at 23–24, 211 S.W.2d at 561. The court next concluded the innocent heirs were unjustly enriched by receiving the property and that the constructive trust reached the property in

their possession because, absent the wrongful acts, they would not have inherited the property. *Pope,* 147 Tex. at 24–25, 211 S.W.2d at 562.

Appellants contend appellees are in the same position as the innocent heirs in *Pope* and, therefore, the funds they received are subject to a constructive trust and may be recovered by appellants. However, unlike the innocent heirs in *Pope,* appellees were not unjustly enriched by receiving the funds from Kalb. In *Walker v. Cotter Properties, Inc.,* 181 S.W.3d 895 (Tex.App.-Dallas 2006, no pet.), we considered a very similar fraudulent scheme in which multiple investors loaned money to Capital Equipment Leasing Company (CELC) for investment in equipment leases. CELC used little of the money to purchase or lease equipment and used some of the invested funds to repay loans from other investors. When the investment scheme fell apart, Jerry Walker and other investors lost significant amounts of money. Walker subsequently settled his claims against CELC and obtained an assignment of any claims CELC had against third parties. He then sued Cotter Properties, Inc., L.L. Cotter, Mary Ka Cotter, Brandon Cotter, and Amy Cotter, arguing the funds they received were loans or advances that had to be repaid to CELC.[2]

We noted both Walker and the Cotters lost thousands of dollars due to the fraud. *Id.* at 900. Further, the Cotters loaned money to CELC and believed the money they received was a return on their investment. *Id.* Because the Cotters were not unjustly enriched, equity would not intervene to allow Walker to recover the funds from them. *Id.* at 900; *see also Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39, 42 (Tex.1992) (party is not unjustly enriched "merely because it 'might

appear expedient or generally fair that some recompense be afforded for an unfortunate loss' to the claimant, or because the benefits to the person sought to be charged amount to a windfall" (citations omitted)). Similarly, appellees, who each lost a significant amount of money due to West's fraudulent investment scheme, were not unjustly enriched when they received the funds from Kalb that they believed were a return on their investments with West.

Because appellees did not have notice of a constructive trust when they received the funds from Kalb and because appellees were not unjustly enriched by receiving the funds, any constructive trust imposed on the funds due to West's fraudulent investment scheme did not survive the transfer of the funds to appellees. The trial court correctly concluded equity should not intervene to impose a constructive trust on the funds appellees received. We affirm the trial court's judgment.

---

2. Amy Cotter's father, Skip Shaw, was the perpetrator of the fraud. Amy was married to Brandon Cotter. L.L. and Mary Ka Cotter were Brandon's parents and owned Cotter Properties, Inc.