



# MEMORANDUM OPINION

No. 04-08-00849-CV

Ronnie J. **PACE**,
Appellant

v.

Linda **LASHLEY**, Individually, d/b/a Texas Hills Investments, and d/b/a THI,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. 05-49-B
Honorable Emil Karl Prohl, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Sandee Bryan Marion, Justice
Rebecca Simmons, Justice
Marialyn Barnard, Justice

Delivered and Filed:  November 4, 2009

AFFIRMED IN PART; REVERSED IN PART

Ronnie J. Pace appeals a judgment awarding damages and a constructive trust to Linda

Lashley, Individually and d/b/a Texas Hills Investments d/b/a THI, after a bench trial.  In nine issues

on appeal, Pace challenges the sufficiency of the evidence to support the trial court's findings on

liability and damages.  Pace also contends the trial court erred in imposing death penalty sanctions

and a constructive trust.  We partially sustain Pace's issue with regard to the constructive trust and

reverse the portion of the trial court's judgment imposing a constructive trust as to the real property and improvements that Lashley conveyed. We affirm the remainder of the trial court's judgment.

### BACKGROUND

Lashley, Pace, and Emmett Brandon jointly owned REL Investments, a partnership which operated or managed certain real property and improvements. Lashley, Chaparral, and Brandon also equally owned two corporations, Diversified Fabricators, Insulators & Contractors, Inc. ("Diversified") and Brandon & Company Industrial Systems, Inc. ("Brandon & Company). Pace was the sole shareholder of Chaparral.

In February of 2000, Lashley sold her interest in the real property and improvements operated or managed by REL Investments to Chaparral and Brandon. As part of the same transaction, Lashley also sold Chaparral and Brandon her stock in Diversified and Brandon & Company. Part of the consideration for the sale of Lashley's interest in the real property and improvements was a note signed by Chaparral and secured by membership interests in DFIC, L.L.C., an entity to which the real property and improvements operated or managed by REL was to be transferred. Part of the consideration for the sale of the stock was a note signed by Chaparral and secured by stock in Diversified and Brandon & Company.

In May of 2000, DFIC Holding Company was formed, and it became the owner of 100% of the stock of Diversified and Brandon & Company. In December of 2002, Chaparral stopped making payments to Lashley on the notes. In September of 2006, Chaparral agreed to the entry of an order finding it liable to Lashley for the balance remaining on both notes. After a bench trial, Pace also was found individually liable for the balance remaining on the notes.

## SUFFICIENCY OF THE EVIDENCE

All of Pace's issues except two challenge the sufficiency of the evidence to support the trial court's findings regarding his individual liability and damages. In his first issue, Pace addresses the sufficiency of the evidence to support the trial court's findings that he was liable for common law fraud and fraud in a real estate transaction. In his second issue, Pace contends the evidence is insufficient to support the trial court's piercing of the corporate veil of various entities to hold Pace individually liable for a corporate obligation. In his third issue, Pace contends the evidence is insufficient to support a finding that DFIC Holding Company was an empty shell corporation. In his fourth issue, Pace asserts the evidence is insufficient to support a finding that he was liable for fraud for failing to disclose a material fact. In his fifth issue, Pace contends the trial court erred in finding that he owed Lashley a fiduciary duty. In his sixth issue, Pace challenges the sufficiency of the evidence to support a finding of damages. Finally, in his eighth issue, Pace contends Lashley's testimony was misleading which we construe as a challenge to Lashley's credibility and the factual sufficiency of the evidence.

In order to prove fraud by failure to disclose, the following elements must be established: (1) a party conceals or fails to disclose a material fact within the knowledge of that party; (2) the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the party intends to induce the other party to take some action by concealing or failing to disclose the fact; and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact. *Bradford v. Vento*, 48 S.W.3d 749, 754-55 (Tex. 2001). As a general rule, a failure to disclose information will constitute fraud when there is a duty to disclose

the information. *McCarthy v. Wani Venture*, 251 S.W.3d 573, 585 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

The trial court made the following findings of fact:

> Pace failed to disclose to Lashley his intention to create another entity, DFIC Holding Company, which would become the sole shareholder of Diversified and Brandon & Company. He also failed to disclose to Lashley his intention to perform no corporate formalities with regard to DFIC[, L.L.C.] other than its initial formation and to permit it to forfeit its charter. Accordingly, he failed to disclose that Lashley's security interests, which Pace represented to be against the issued and outstanding shares of DFIC, in a valuable and viable entity, were in reality essentially worthless or would become worthless long before the Promissory Notes were paid. Had Pace disclosed his true intentions, Lashley would not have entered into the sale-and-purchase transactions but would have retained her interests in the real property and improvements and in Diversified and Brandon & Company. Instead, Lashley entered into the sale-and-purchase transactions, and suffered injury.

Based on its findings, the trial court made the following conclusions of law:

> Pace's failure to disclose material facts, which were omissions for the purpose of inducing Lashley to enter into the Sale-and-Purchase Agreements, Promissory Notes, and Security Agreements and relied on by her in entering into those agreements, constitute common-law fraud and fraud in a real estate and stock transaction.

> Pace and Chaparral's wrongful and unlawful actions, both of commission and omission, or both, separately or collectively, were the proximate cause of Lashley's damages sought in this lawsuit.

At trial, Lashley testified that Pace failed to disclose to her his intention to convey the stock that was pledged as security to another entity.[1] Lashley further testified that she would not have entered the deal if she had known.

Pace challenges the trial court's findings and conclusions relating to his fraud by failure to disclose in his fourth issue, asserting:

---

[1] In his brief, Pace does not challenge the trial court's implied conclusion that he had a duty to disclose this information.

"The great weight and preponderance of the evidence shows this testimony to be a [sic] least inaccurate and at most self-serving. The letters and agreements speak for themselves. Evidence with regard to intent to induce the Appellee are absent and there is no evidence that Appellee relied on any failure to disclose to her detriment."

We also construe Pace's eighth issue, i.e., "The Appellee's Testimony Was Misleading" as a challenge to the sufficiency of the evidence to support the trial court's fraud by failure to disclose findings because the issue challenges Lashley's credibility.

We initially note that Pace's fourth issue is inadequately briefed because he fails to provide record citations to support his assertion. *See* TEX. R. APP. P. 38.1(i). Similarly, in the argument supporting his eighth issue, the only record citations provided with regard to Pace's assertion that Lashley was aware that a holding company was to be formed are to documents attached to Pace's motion for new trial that were not introduced as evidence during trial and, therefore, cannot be considered in addressing a sufficiency challenge. In his eighth issue, Pace alludes to "letters mentioning the holding company (the ESOP) already referenced," but again fails to provide a record citation.

Setting aside the briefing deficiencies and acknowledging that the trial court took judicial notice of the documents in the file during the bench trial, the clerk's record does contain a January 6, 2000 letter to Lashley regarding the transaction. Pace appears to argue that because the letter discussed the terms of the proposed sale and referred to an ESOP, the letter was evidence that Lashley knew that a holding company would be created to which the stock would be conveyed. The trial court, however, was in the position to weigh the evidence and determine the credibility of the witnesses. *Dwairy v. Lopez*, 243 S.W.3d 710, 713-14 (Tex. App.—San Antonio 2007, no pet.).

After stating that Lashley or THI would receive two notes for $750,000.00 each in exchange for her stock, the letter to which Pace refers states:

> In the event a partial payment is made in any one quarter, the escrow agent receiving payments from the ESOP will make payments to satisfy THI's note payment first with the remainder of the funds being paid to Emmet [sic] and Ronnie to satisfy the notes to them from the ESOP. The escrow agent shall apply subsequent payments to satisfy any amount due and owing on THI's notes first and then to satisfy any deficiency of the oldest outstanding payments on the notes to Emmett and Ronnie. Emmett and Ronnie will have a security interest in the stock they sell to the ESOP as collateral for their note. They will assign their interest in 1/3 of this stock security interest to THI as collateral for your note. If a default should occur on the notes, the three of you will take the stock back to satisfy the remaining debt from the original purchase and sale.

Given the conflict between the terms set forth in the letter and the final documents reflecting the transaction, the trial court could have decided to give little or no weight to the letter. Instead, the trial court could have determined that the final terms of the sale had changed from the date of the letter and that the closing documents themselves accurately reflected that Lashley was to receive a security interest in the stock of Diversified and Brandon & Company. For example, the promissory note provided for 40 quarterly installments and did not mention any partial payments or payments from escrow agents. In addition, the security agreements expressly pledged stock in Diversified and Brandon & Company as security. Moreover, no evidence was presented that would link the ESOP referenced in the letter to DFIC Holding Company, and no evidence was introduced of any subsequent assignment of stock in DFIC Holding Company or an interest in that stock to Lashley from Pace or Brandon. Finally, the final documents contain a merger clause; therefore, the substance of any pre-execution negotiations, including the text of any prior drafts, is not a permissible consideration. *See Bandera Drilling Co. v. Sledge Drilling Corp.*, No. 11-08-00284-CV, 2009 WL 2401779, at *3 (Tex. App.–Eastland Aug. 6, 2009, no pet. h.).

Therefore, Lashley's testimony supports the trial court's finding that Pace failed to disclose his intention to transfer the stock pledged to secure the note to another entity. In addition, the trial court could infer from the circumstances that Pace concealed the intended conveyance to induce Lashley to enter the sale and purchase transactions, including the fact that the stock was transferred to DFIC Holding Company only three months after the transactions closed. *See Matis v. Golden*, 228 S.W.3d 301, 310 (Tex. App.—Waco 2007, no pet.) (noting intent to induce party to act can be inferred from circumstances); *IKON Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 124 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (same). Finally, Lashley's testimony that she would not have entered into the deal if she had known of the intended conveyance is evidence supporting the trial court's reliance finding.

With regard to Pace's issue challenging the sufficiency of the evidence to support the trial court's damage findings, the trial court took judicial notice of the documents in the file which included Lashley's affidavit regarding the notes being in default and the balance owing on the notes. This evidence was sufficient to support the trial court's damage findings because Lashley testified that she would not have entered into the transactions if Pace had disclosed his intention to convey the stock. Moreover, the conveyance of the stock compromised Lashley's ability to foreclose on her security interest in the stock when Chaparral defaulted on the notes. Because we find the evidence sufficient to support the trial court's findings with regard to liability and damages under the fraud by failure to disclose claim, we do not address the other alternative causes of action.

### DEATH PENALTY SANCTIONS

In his seventh issue, Pace contends the trial court erred in imposing death penalty sanctions. The order about which Pace complains precluded him from introducing any document into evidence

that was not produced to Lashley as discovery. The order also precluded Pace from objecting to the introduction at trial of documents Lashley obtained from other sources. Finally, the order provided that the jury would be instructed to presume certain evidentiary matters supported Lashley's claims. The presumption would apply to evidentiary matters subject to proof by documents that existed but Pace filed to produce.

"[W]hether an imposition of sanctions is just is measured by two standards." *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). "First, a direct relationship must exist between the offensive conduct and the sanction imposed." *Id*. "Second, just sanctions must not be excessive." *Id*.

"A just sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party, and the sanction should be visited upon the offender." *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003). "The trial court must attempt to determine whether the offensive conduct is attributable to counsel only, to the party only, or to both." *Id.* In this case, the trial court was informed that Pace personally stated in a deposition that he would produce the discovery that he had failed to produce in response to the trial court's first discovery order. The trial court was further informed that Pace provided his personal assurance to avoid having to testify at his deposition regarding those documents. Although Pace asserts in his brief that he was following the advice of counsel in failing to produce the documents, no evidence of any reliance on the advice of counsel was introduced at the hearing before the trial court. Accordingly, the trial court did not err in determining that the sanction should be visited upon Pace.

"[A] sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes, which include securing compliance with discovery rules, deterring other

litigants from similar misconduct, and punishing violators." *Spohn Hosp.*, 104 S.W.3d at 882. Courts must consider less stringent sanctions in determining whether lesser sanctions would fully promote compliance. *Id*.

The record reflects that the trial court initially ordered Pace to produce the documents without imposing sanctions. The order required the documents to be produced by October 24, 2006. Pace subsequently promised to produce documents by October 13, 2006 to avoid any further deposition questions regarding those documents. The hearing on Lashley's request for sanctions was held on October 27, 2006, and trial was set for November 7, 2006. At the time the trial court imposed sanctions (which was one week before the start of trial), Pace had ignored the prior court order and his own promises in "callous disregard for the responsibilities of discovery under the rules." *TransAmerican Natural Gas Corp.*, 811 S.W.2d at 918. We hold, therefore, that the sanctions imposed by the trial court were just.

## CONSTRUCTIVE TRUST

"A constructive trust is an equitable remedy created by the courts to prevent unjust enrichment." *Baker Botts, L.L.P. v. Cailloux*, 224 S.W.3d 723, 736 (Tex. App.—San Antonio 2007, no pet.). "A constructive trust is a relationship with respect to property, subjecting the person by whom the title to the property is held to an equitable duty to convey it to another, on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property." *Id*. "To obtain a constructive trust, the proponent must prove: (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res." *Troxel v. Bishop*, 201 S.W.3d 290, 297 (Tex. App.—Dallas 2006, no pet.).

In this case, the trial court imposed a constructive trust on the real property and improvements conveyed by Lashley as part of the sale and purchase transaction. However, no evidence was introduced at trial to establish who currently holds legal title to that property. We note that during opening arguments, Pace's attorney stated, "DFIC still owns – well, owned up until Mr. Brandon recently transferred the ownership – owned a very significant piece of real property in Center Point, Texas." Although this statement was not evidence, Lashley did not introduce a title report or other testimony to support a finding that DFIC, L.L.C. currently owns the property Lashley conveyed to Chaparral and Brandon who then conveyed it to DFIC, L.L.C. Without evidence of the current ownership, the trial court erred in imposing a constructive trust on the property. *See Cote v. Texcan Ventures, II*, 271 S.W.3d 450, 453-54 (Tex. App.—Dallas 2008, no pet.) (noting circumstances in which transfer of property to third party precludes imposition of constructive trust); *Baker Botts, L.L.P.*, 224 S.W.3d at 737 n.16 (noting constructive trust may not be imposed upon the property in the hands of the third party who is a bona fide purchaser for value without notice).

The trial court also imposed a constructive trust on the shares of common stock in Diversified and Brandon & Company that Lashley conveyed. In his brief, Pace makes an argument that the imposition of a constructive trust was improper because he only held "the value of the stock in his name as it was valued in the market at the time the company was liquidated." Pace provides no record citations to any evidence of a liquidation. Pace also asserts the terms of the note only entitled Lashley to the return of her collateral in the event of a default. It would appear that Pace is contending that a trial court cannot impose a constructive trust if a security agreement only entitles a secured party to the return of the collateral. Pace does not cite any authority to support this contention, and we note that it was the conveyance of the stock to DFIC Holding Company that

compromised Lashley's security interest in the stock. *See Baker Botts, L.L.P.*, 224 S.W.3d at 736 (noting scope and application of constructive trust is left to discretion of court imposing it). Finally, Pace contends that the evidence failed to trace the property to an identifiable res. The evidence at trial, however, traced the stock in Diversified and Brandon & Company that Lashley conveyed to Chaparral and Brandon to DFIC Holding Company. Accordingly, Pace's complaints regarding the constructive trust relating to the stock conveyed by Lashley are overruled.

## CONCLUSION

The portion of the trial court's judgment imposing a constructive trust with regard to the real property and improvements that Lashley conveyed is reversed, and judgment is rendered denying Lashley's request for a constructive trust as to the real property and improvements. The remainder of the trial court's judgment is affirmed.

Marialyn Barnard, Justice