# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00400-CV

---

**Andrew Jacob Brenner, Appellant**

**v.**

**Tiffany Nicole Brenner, Appellee**

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-21-003968, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Andrew Jacob Brenner appeals the trial court's Final Decree of Divorce, which ended his marriage with his wife, Tiffany Nicole Brenner. The court in the Decree[1] imposed a constructive trust on future payments to Andrew[2] as a stockholder in a corporation partly because his shares of stock were community property and the Decree otherwise awards Tiffany a 60% beneficial ownership interest in the same shares. The court in the Decree also awarded Tiffany an amount in monthly child support greater than the amount computed under the statutory child-support guidelines. On appeal, Andrew in two issues contends that (1) the treatment of the future payments by the corporation is based on a mischaracterization of property as community property when some or all of the future payments should instead have been characterized as his

---

[1] The Decree grants other relief not challenged in this appeal.

[2] We refer to the parties by their first names because they share a surname.

separate property alone and (2) there was insufficient evidence of the proven needs of the children necessary to support the above-guidelines support award. We reject these arguments and affirm.

**BACKGROUND**

Andrew and Tiffany are the parents to two minor children, who were 11 and 8 years old at the time of trial. During Andrew and Tiffany's marriage, Andrew worked as an oncologist, and Tiffany stayed at the home to care for it and the couple's children. Along with his work at a hospital and at an oncology practice, Andrew has developed with others a drug designed to be used to treat patients with breast cancer. The corporation NanoTx was formed, and it owns the patent rights to the drug. During his marriage to Tiffany, Andrew acquired stock in NanoTx amounting to 30.33% ownership of the corporation, using community funds for the acquisition. No one disputes that the stock in NanoTx that is in Andrew's name is community property.

NanoTx entered into a Patent and Know-How License Agreement (the Agreement) with Plus Therapeutics, Inc. Under the Agreement, NanoTx licensed certain rights to the drug to Plus for it to develop, manufacture, and commercialize the drug for the public. The Agreement contemplated that there could or would be certain milestones in that process and that upon the achievement of those milestones, Plus would owe NanoTx certain sums of money. NanoTx's bylaws expect that the corporation may from time to time pay money to its stockholders in the form of distributions or dividends.

In June 2021, Tiffany filed this divorce suit after discovering Andrew's adultery. The parties tried the divorce suit to the bench, and Tiffany's claims for relief included seeking a disproportionate share of the division of the community estate and monthly child support above the amount calculated by the default statutory guidelines. The trial court in the Decree, among

2

other things, granted the divorce on the grounds of adultery; awarded Tiffany a 60% beneficial ownership interest, and Andrew a 40% beneficial ownership interest, in the community-property stock in NanoTx; imposed a constructive trust on future payments by NanoTx to Andrew as its stockholder so that Tiffany would receive her 60% share; and awarded Tiffany above-guidelines monthly child support. The court also issued written findings of fact and conclusions of law. Andrew now appeals the Decree.

## DISCUSSION

On appeal, Andrew brings two issues. In his first, he contends that the trial court abused its discretion in its treatment of future payments by NanoTx to Andrew as one of its stockholders, for which the court in its Decree established the constructive trust. In his second issue, he contends that for purposes of the court's award of above-guidelines child support, there was insufficient evidence of the children's needs.

## I. The trial court did not abuse its discretion in its treatment of, and ordering of the constructive trust concerning, money to be paid by NanoTx to Andrew as stockholder.

In his first appellate issue, Andrew contends that the trial court in the Decree mischaracterized potential future payments by NanoTx to Andrew as one of its stockholders as community property rather than characterizing some of them as separate property. Community property is the property, other than separate property, acquired by either spouse during marriage, while separate property is the property owned or claimed by the spouse before marriage as well as property that the spouse acquired during marriage by gift, devise, or descent. *See* Tex. Fam. Code §§ 3.001–.002; *Goyal v. Hora*, No. 03-19-00868-CV, 2021 WL 2149628, at *5 (Tex. App.—Austin May 27, 2021, no pet.) (mem. op.). "Property possessed by either spouse during or on dissolution of marriage is presumed to be community property," and the burden of proof for

3

rebutting this presumption is clear and convincing evidence. Tex. Fam. Code § 3.003(a)–(b). We review a characterization issue such as this for an abuse of discretion—the trial court abuses its discretion only if it acts arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *See Goyal*, 2021 WL 2149628, at \*1. A trial court abuses its discretion if it fails to analyze the law correctly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011).

Andrew's issue stems from the 30.33% stock ownership in NanoTx. The trial court ruled in its findings and conclusions—and no one disputes—that Andrew is named as owner of stock in NanoTx constituting 30.33% ownership of the corporation and that the stock was community property of Andrew and Tiffany's community estate. As part of its just-and-right division of the community estate, the trial court awarded Andrew an undivided 40% beneficial interest in the stock and Tiffany an undivided 60% beneficial interest in the same stock.

Specifically under this appellate issue, Andrew complains about the trial court's division of any future money paid by NanoTx to Andrew as its stockholder. The court imposed the constructive trust, naming Andrew as constructive trustee and Tiffany as beneficiary, on "all dividend income, distributions, proceeds, profits, revenues, commissions, and shares of stock distributed by NanoTx . . . and allocated to [Andrew] as a shareholder in NanoTx." *See Messier v. Messier*, 458 S.W.3d 155, 164 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("A constructive trust is imposed when one party holds property that legally belongs to the other."); *McCullough v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871, 918 (Tex. App.—Dallas 2014, pet. denied) ("[A] constructive trust is a remedial device that when imposed, subjects the one who holds title to the property to an equitable duty 'to convey it to another, on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property.'" (quoting *Cote v. Texcan Ventures II*, 271 S.W.3d 450, 453 (Tex. App.—Dallas

4

2008, no pet.))).  Tiffany and Andrew are to enjoy beneficial ownership in all those assets in the same proportion as that established by the division of the stock in the just-and-right division of the community estate—60% to Tiffany and 40% to Andrew.  We review the imposition of a constructive trust for an abuse of discretion.  *See Baker Botts, L.L.P. v. Cailloux*, 224 S.W.3d 723, 736 (Tex. App.—San Antonio 2007, pet. denied); *Schneider v. Schneider*, 5 S.W.3d 925, 929 (Tex. App.—Austin 1999, no pet.).

Under the terms of the constructive trust, Andrew, among other obligations, is to "exercise reasonable prudence and care in the management of [Tiffany]'s share of the undivided interest in NanoTx . . . and the proceeds therefrom as if such interests were [Andrew]'s own" and handle "Distributions" from NanoTx in a certain way.  "Distributions" is defined in the Decree as "includ[ing] money, other property, dividend income, distributions, proceeds, profits, revenues, and commissions distributed by NanoTx . . . allocated and received pursuant to the Certificate of Incorporation of NanoTx, Corp., the Bylaws of NanoTx, Corp., and Action by Unanimous Written Consent of NanoTx, Corp., and any amendments thereto."  (Italics removed.)  Andrew is to "transfer [Tiffany]'s share of all Distributions into an account designated in writing by [her] within five (5) business days of [his] receipt of such Distributions or within five (5) business days after [she] designates an account in which to deposit such Distributions, whichever is later."

Andrew's contention is that this constructive trust is inappropriate because it relies on, he argues, a mischaracterization as community property of so-called "Milestone Payments" that are provided for and governed by the Agreement between NanoTx and Plus.  Under the Agreement, in which Plus is the "Licensee" and NanoTx the "Licensor," the Milestones are possible events in the successful development, testing, marketing, and sale of the drug that is the subject of the Agreement.  Upon the achievement of each Milestone, Plus owes NanoTx a sum of

5

money: "Licensee shall pay to Licensor a one-time, non-refundable, non-creditable payment following the milestone event set forth below (each a 'Milestone Payment') within thirty (30) Calendar Days after the first achievement of the corresponding milestone event."[3] (Bolding removed.) Andrew argues that for any of the Milestones to be met in the future, his labor will be essential. Therefore, he argues, all Milestone Payment funds that will be distributed to him are at least partially his separate property, and the portion of the payments that should be considered to be his separate property is the proportion of his labor that was performed after the marriage ended to secure achievement of the Milestone. At trial, Andrew testified that the first Milestone is still a work in progress, that it would take 10 to 15 years to complete all the Milestones, and that his continued employment is essential to the completion of NanoTx's obligations to Plus under the Agreement. As a result, Andrew argues, any post-divorce dividends or distributions received when the Milestones are met should be prorated based on the amount of time the parties were married compared to the amount of time that he works post-divorce to earn those dividends or distributions.

There is no dispute here that money coming into NanoTx by the Milestone Payments would be passed on to Andrew, if at all, only in the form of dividends or distributions of money by NanoTx to all its stockholders. In other words, Andrew would receive money that began as Milestone Payments, paid by Plus to NanoTx, only via the 30.33% stock interest that the community estate enjoyed in NanoTx and that has now been addressed by the Decree's just-and-right division. There is no evidence of any other method for the Milestone Payments

---

[3] The Milestones and their amounts to be paid by Plus to NanoTx are listed in a table in the same section of the Agreement. For example, for achievement of "First Patient Treated in Phase 3 (Pivotal Trial)," Plus is to pay NanoTx $2 million.

money to be routed to Andrew, and the trial court in its written findings and conclusions found that the Milestone Payments will be disbursed in the form of dividends to NanoTx's shareholders.

We conclude that the trial court did not abuse its discretion by its treatment of dividend and distribution income resulting from the 30.33% stock ownership. The Decree awards Tiffany 60% beneficial ownership of the stock at issue and Andrew 40% beneficial ownership of that same stock. We do not see in the appellate briefing that Andrew is challenging this 60%–40% split. With that split as a given then, any dividends or distributions paid out by NanoTx to its stockholders should ultimately be paid to Tiffany in the proportion of her ownership as awarded in the Decree, 60% of 30.33%. The constructive-trust provisions of the Decree simply carry out the uncontested 60%–40% split of the stock—once the dividends or distributions are paid out by NanoTx, some mechanism must ensure that Tiffany receives her share because Andrew is the only named owner of the stock at issue. *See Holmes v. Kent*, 221 S.W.3d 622, 628 (Tex. 2007) (per curiam) ("[C]onstructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice." (quoting *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974))); *Meadows*, 516 S.W.2d at 131 ("[T]here is no unyielding formula to which a court of equity is bound in decreeing a constructive trust, since the equity of the transaction will shape the measure of relief granted."). We have said that "cash dividends on separately held stock are community property." *See Smith v. Lanier*, 998 S.W.2d 324, 332 n.7 (Tex. App.—Austin 1999, pet. denied). Even more so, then, are cash dividends on *community*-held stock also community property, so it is appropriate that the constructive trust provides for how Tiffany's 60%-of-30.33% interest in NanoTx dividends and distributions going forward will be paid out.

7

Andrew argues that some of the money resulting from the Milestone Payments should be characterized as his separate property alone. He first puts forward several authorities about the proper characterization of salaries, wages, and bonuses; retirement benefits earned under defined-benefit plans; funds earned under defined-contribution plans; unvested retirement benefits; employer-provided stock options and restricted stock units; severance pay; disability benefits and workers'-compensation benefits; and damages for personal injuries to compensate for lost earning capacity. But we are not dealing with any of those types of assets here. We are dealing with dividends or distributions of NanoTx corporate revenues to the corporation's stockholders.[4] And there is no dispute that the stock in Andrew's name representing 30.33% ownership of NanoTx was community property and not his separate property.

He next points to testimony of his from trial. For example, he points to his testimony that none of the Milestones would occur without his labor and that he has to continue as an employee of NanoTx while the drug is being developed, marketed, and the rest. But the trial court found in its findings and conclusions that Andrew's testimony on these topics was not credible. We may not disturb that credibility assessment by placing any weight on the testimony that Andrew is relying on here. *See Wilson v. Wilson*, No. 03-03-00196-CV, 2004 WL 524465, at *1 (Tex. App.—Austin Mar. 18, 2004, no pet.) (mem. op.).

Finally, Andrew points to various other provisions of the Agreement. We interpret unambiguous contractual provisions as a matter of law. *See Spradley v. Spradley*, No. 03-13-00745-CV, 2014 WL 1279658, at *2 (Tex. App.—Austin Mar. 26, 2014, no pet.) (mem.

---

[4] This is not a case of dividends or distributions that are intended to liquidate all the corporation's assets upon its dissolution. *See, e.g.*, *Legrand–Brock v. Brock*, 246 S.W.3d 318, 321 (Tex. App.—Beaumont 2008, pet. denied) (discussing such liquidation distributions).

8

op.).  Andrew relies on NanoTx's obligation under the Agreement to transfer contractually defined "Know-How" to Plus.  That term means all

> Information and Inventions Controlled by Licensor in existence as of the Effective Date that is [sic] necessary of [sic] useful to Exploit the Licensed Patents in the Field in the Territory, including, but not limited to, all Information, data or results pertaining to pre-clinical and clinical studies and the manufacturing process or processes.

The argument seems to be that because Andrew was and is instrumental to NanoTx's creation and transfer of Know-How to Plus, some of the money resulting from Milestone Payments must be characterized as his separate property alone.  We fail to see the connection, however—no matter NanoTx's contractual Know-How obligations, the separate provisions of the Agreement providing for the Milestone Payments still set up payments as being owed by Plus to NanoTx.  And then that money undisputedly reaches Andrew, if at all, only because of ownership of stock in NanoTx.

Our view is much the same regarding Andrew's reliance on the Agreement's Joint Steering Committee provision, under which NanoTx and Plus were to "establish a Joint Steering Committee ('JSC') to facilitate communication and provide a forum to discuss and exchange information on the overall strategic Development of Licensed Products."  Presumably Andrew is a NanoTx-designated member of the JSC, and the Agreement requires that the JSC's members agree on certain clinical plans and clinical trials for the drug's development and testing.  But we again fail to see the connection between this contractual provision and Andrew's mischaracterization argument—no matter what Andrew might be obligated to do by NanoTx, or what NanoTx must do under the Agreement, the Agreement provides for Milestone Payments from Plus to NanoTx, and those funds would undisputedly be paid out to Andrew, if at all, only because

9

of the stock ownership. Nothing in the Agreement requires that it be Andrew who undertakes any action on behalf of either NanoTx or Plus.

In all then, we conclude that the trial court did not abuse its discretion in its treatment of the payments at issue, including in the Decree's provisions for the constructive trust. We overrule Andrew's first issue.

**II.    The trial court did not abuse its discretion in its award of child support because there was sufficient evidence of the children's needs.**

In his second appellate issue, Andrew contends that the trial court's above-guidelines child-support award to Tiffany was improper because the evidence was insufficient to support the proven needs of the children. Though the guidelines would provide for an award of $2,300 per month in support from Andrew, Tiffany adduced evidence that she said showed the children's needs as calling for $6,709 per month. Ultimately, Tiffany requested $5,000 per month, and the court awarded that amount.

The Family Code sets forth guidelines based on percentages of a parent's income for calculating the parent's child-support obligation, and a trial court may order a child-support obligation in excess of the amount computed under the statutory percentage guidelines but only if there is evidence of "the proven needs of the child." *See* Tex. Fam. Code §§ 154.125–.126; *Coburn v. Moreland*, 433 S.W.3d 809, 834 (Tex. App.—Austin 2014, no pet.).

This issue is reviewed for an abuse of discretion. *Coburn*, 433 S.W.3d at 823. Under this standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error but are relevant factors in determining whether the trial court abused its discretion. *Id.* In determining whether the trial court abused its discretion, we consider whether the trial court had sufficient evidence on which to exercise its discretion and if so, whether it erred in the exercise

10

of that discretion. *Id.* We consider only the evidence most favorable to the trial court's ruling and will uphold its judgment on any legal theory supported by the evidence. *Id.* A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the court's decision. *Id.*

Trial courts enjoy broad discretion when determining for support purposes the needs of a child, discretion that may be applied in a case-by-case manner and that is grounded in "the 'paramount guiding principle: *the best interest of the child*.'" *Id.* at 836 (quoting *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 417 n.3 (Tex. 1993)). A trial court sitting as factfinder at a hearing on child support is the sole judge of the credibility of the witnesses and the weight assigned their testimony and may accept or reject all or any part of the testimony of each witness. *Klages v. Klages*, No. 03-20-00086-CV, 2021 WL 2604064, at *3 (Tex. App.—Austin June 25, 2021, no pet.) (mem. op.). Evidence to support an above-guidelines support award can include evidence of non-divisible expenses, for example, the mortgage payment on the house where the children live with the parent seeking the support award, and the evidence need not segregate those expenses between the children and others. *Coburn*, 433 S.W.3d at 836. The trial court may make a reasonable allocation of the non-divisible expenses. *Id.* The evidence also may include a parent's testimony about "estimates and projections of future expenses and needs of the children," which "are as relevant and probative as past and current expenses and needs." *Zajac v. Penkava*, 924 S.W.2d 405, 409 (Tex. App.—San Antonio 1996, no writ); *see also Klages*, 2021 WL 2604064, at *3 (citing this holding with approval).

We have upheld above-guidelines support awards where the evidence of the needs of the child included evidence of professional therapy, household maid services, cable television, yard maintenance, caretaking of the home, cleaning supplies, vehicle maintenance, car insurance,

life insurance, extracurricular activities, and outings like trips to the zoo or to theme parks. *See Goyal*, 2021 WL 2149628, at *4; *Klages*, 2021 WL 2604064, at *3; *Coburn*, 433 S.W.3d at 836. Our sister courts have upheld support awards where the managing-conservator parent presented evidence that the child's needs included expenses for private-school tuition, extracurricular activities, summer camps, gasoline, clothing, a car lease, an allowance, and half of the parent's mortgage. *See In re C.A.W.*, No. 14-16-00768-CV, 2017 WL 3927235, at *4–5 & n.5 (Tex. App.—Houston [14th Dist.] Sept. 7, 2017, no pet.) (mem. op.); *Scott v. Younts*, 926 S.W.2d 415, 421–22 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied).

Here, the evidence showing the needs of the children included Tiffany's testimony and an exhibit that she prepared of relevant monthly expenses. She testified that the children have needed a math tutor and that their other needs include monthly expenses for a share of the housing payments (either mortgage or rent) and utilities, of food, and of meals away from home, all while the children live with her.[5] She also testified that the childrens' needs include a share allocated to

---

[5] Andrew directs an argument specifically at the evidence about monthly housing costs:

> Tiffany Nicole Brenner testified at trial that a $2,500 monthly mortgage expense she listed on her Proposed Support Decision was an "estimated" expense. Given the size of the community estate and the value of the assets she was awarded in the Final Decree of Divorce, Tiffany Nicole Brenner's "estimated" mortgage was entirely speculative. Indeed, Tiffany Nicole Brenner was awarded $342,391.61 from the proceeds of the sale of the marital residence alone pursuant to the Final Decree of Divorce. Given the large amount of liquid funds available to use towards the purchase of a home, the estimated mortgage payment is pure conjecture.

(All-capitalizations, italics, and record citations removed.) But we conclude that Tiffany's evidence about housing costs was not speculative because of what she testified to about how she arrived at her figures. She testified that because she would not be able to stay in the marital home due to her comparatively lower ability to earn an income, she has conducted a year's worth of research about prices of houses just outside of Austin, including working with a realtor. Andrew testified that the children needed to stay near Austin because of their friend circle and family in

12

them of monthly expenses for medical, dental, orthodontic, and mental-health treatments; clothing; the car payment; gasoline; and car maintenance. Tiffany's exhibit, admitted into evidence, echoes her testimony and shows other estimated monthly needs of the children relating to their allocated share of expenses for property taxes, HOA dues, home maintenance, yard maintenance, home security, homeowner's or renter's insurance, cable television, internet, newspaper, other groceries, vehicle inspection and registration, school tuition, school supplies, extracurricular activities, other entertainment, haircuts, pet expenses, an allowance, and birthday and holiday gifts. We hold that Tiffany's testimony and exhibit together constitute legally sufficient evidence to support proof of the needs of the children for purposes of the above-guidelines support award. *See Klages*, 2021 WL 2604064, at *3–5; *Coburn*, 433 S.W.3d at 836.

In terms of putting forward contrary evidence for our factual-sufficiency review, Andrew points to only the fact that elsewhere in the Decree, the trial court awarded Tiffany over $340,000 of the proceeds from the sale of the marital home. The Decree was not part of the evidence before the trial court at trial, so it does not undermine our conclusion that Tiffany's testimony and exhibit were factually sufficient to uphold the support award.

In all, there was evidence of a substantive and probative character before the trial court to support its decision about the proven needs of the children. *See Coburn*, 433 S.W.3d

---

town. Tiffany testified about the bases for her belief in the $2,500 amount, thus providing the trial court information on which to exercise its discretion in making the child-support award. *See Brickley v. Joseph-Stephen*, No. 03-22-00574-CV, 2023 WL 2316346, at *4 (Tex. App.—Austin Mar. 2, 2023, pet. denied) (mem. op.) (testimony not speculative when witness testified to bases that reasonably supported testimony at issue). Andrew's argument seems to be that Tiffany is required to make an all-cash purchase of a new home because of the assets awarded to her in the divorce, but he provides no legal authority to support that purportedly required outcome.

at 823. The trial court thus did not abuse its discretion, and we overrule Andrew's remaining appellate issue.

## CONCLUSION

We affirm the trial court's judgment.

_____

Chari L. Kelly, Justice

Before Justices Triana, Kelly, and Theofanis

Affirmed

Filed:   July 25, 2025

14