**CITY OF FREDERICKSBURG,**
**Appellant,**

v.

**Friedhelm Claus BOPP, Appellee.**

No. 04–02–00663–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 5, 2003.

William M. McKamie, Barbara L. Quirk, Law Office of William M. McKamie, P.C., Deborah L. Leach, Lopez & Smith, San Antonio, for appellant.

Jonathan B. Cluck, Grace S. Bellomy, Kelly Putney Rogers, Nunley, Davis, Jolley & Hill, L.L.P., Boerne, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

In this appeal, the City of Fredericksburg (the "City") attempts to enforce a sign ordinance against Friedhelm Claus Bopp ("Bopp"). The City asserts five issues on appeal. We overrule the City's issues, and conclude that we need not address Bopp's cross-issues. Accordingly, we affirm the judgment of the trial court.

### BACKGROUND

Bopp owns and operates Friedhelm's Bavarian Inn Restaurant and Bar in Fredericksburg. This property was owned by Bopp when it was annexed by the City. At the time of annexation, a free-standing pole sign advertising the restaurant existed on the property. On or about August 13, 1998, Bopp secured a sign permit from the City and constructed a wall sign on the face of the building. The City had actual knowledge of the existence of the pole sign at the time it granted the sign permit for the new wall sign.

After Bopp constructed the wall sign, the City sued him claiming that the new wall sign and pole sign, taken together, exceeds the maximum total signage area

allowed by the City of Fredericksburg sign ordinance. The City sought a permanent injunction enjoining Bopp from continuing to violate the sign ordinance and a declaratory judgment that Bopp's property was in violation of the sign ordinance. Bopp answered asserting various affirmative defenses, including estoppel and unclean hands. Additionally, Bopp asserted various counterclaims, including a claim for declaratory judgment seeking a declaration regarding the validity of the sign ordinance and his rights under the ordinance.

The case went to a bench trial in September 2001. At the conclusion of trial, the trial court abated the case for ninety days. The trial court commented that he did not believe the City had met its burden and that the City needed to enact a comprehensive sign ordinance. The trial judge also suggested that Bopp go "hat in hand" to the City to apply for an exception for his sign. The record reflects that Bopp did attempt to obtain a variance from the City by applying to the Board of Adjustment, but the variance was denied. On August 23, 2002, the trial court entered a final judgment that permitted Bopp's pole and wall signs to remain on his property and denied the remaining claims. The trial court subsequently entered findings of fact and conclusions of law. Both the City and Bopp appeal the final judgment.

### STANDARD OF REVIEW

In its first and fifth issues, the City contends the evidence does not legally or factually support the findings of fact and conclusions of law filed by the trial court. As related issues, the City argues that the trial court's judgment impermissibly grants Bopp a variance and that the trial court erred in applying Chapter 216 of the Texas Local Government Code to this case. Lastly, the City contends that it was entitled to a declaratory judgment that Bopp's signs violated the ordinance and that it was entitled to a permanent injunction requiring the signs to be brought into compliance.

A trial court's findings are reviewed for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the evidence supporting a jury's answer. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). We review conclusions of law *de novo. Tex. Dep't of Public Safety v. Stockton,* 53 S.W.3d 421, 423 (Tex.App.-San Antonio 2001, pet. denied). Conclusions of law will not be reversed unless they are erroneous as a matter of law. *Spiller v. Spiller,* 901 S.W.2d 553, 556 (Tex.App.-San Antonio 1995, writ denied). Incorrect conclusions of law will not require a reversal of the trial court's judgment if the controlling findings of fact will support a correct legal theory. *See Aguero v. Ramirez,* 70 S.W.3d 372, 373 (Tex.App.-Corpus Christi 2002, pet. denied).

### UNCLEAN HANDS AND ESTOPPEL

Bopp contends that the trial court did not err in denying the City relief because the City has unclean hands. Specifically, Bopp contends that the City's own conduct in granting a permit that it now, in essence, seeks to revoke was unconscientious, unjust, and marked by a want of good faith. Bopp also contends that the City is estopped from seeking relief in general because of its conduct. The City contends that these equitable defenses are irrelevant because they cannot be asserted against a governmental entity, such as a municipality, exercising its police power.

■ A party seeking an equitable remedy must do equity and come to court with clean hands. *Truly v. Austin,* 744 S.W.2d 934, 938 (Tex.1988); *Crown Constr. Co. v. Huddleston,* 961 S.W.2d 552, 559

(Tex.App.-San Antonio 1997, no pet.). The doctrine of unclean hands applies to a litigant whose own conduct in connection with the same matter or transaction has been unconscientious, unjust, marked by a want of good faith or violates the principles of equity and righteous dealing. *Crown Constr. Co.*, 961 S.W.2d at 559; *Thomas v. McNair*, 882 S.W.2d 870, 880 (Tex.App.-Corpus Christi 1994, no writ). A party seeking to invoke this equitable doctrine must show that he has been seriously harmed and the wrong complained of cannot be corrected without applying the doctrine. *Thomas*, 882 S.W.2d at 880.

 As a related defense, equitable estoppel is based on the principle that "one who by his conduct has induced another to act in a particular manner should not be permitted to adopt an inconsistent position and thereby cause loss or injury to the other." *Maguire Oil Co. v. City of Houston*, 69 S.W.3d 350, 367 (Tex.App.-Texarkana 2002, pet. denied). Equitable estoppel is established when "(1) a false representation or concealment of material facts; (2) is made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex.1998).

 The trial court made specific findings regarding the defenses of unclean hands and estoppel. It found that: (1) the permit issued was not conditioned on Bopp's removal of the old pole sign; (2) a City employee represented to Bopp that the new sign application was in compliance with the city code; (3) the City allowed the new sign to be approved and built without any notice of actual or potential non-compliance until after the wall sign was erected; (4) following construction of the new sign, the City raised a question regarding the total area of the signs; (5) the testimony regarding the City employees' conversation with Bopp was not credible; (6) no conversations occurred between Bopp and Coy Summers ("Summers"), the City's Building Official, regarding the removal of the old sign prior to the issuance of the sign permit; (7) the pole sign was "grandfathered" in at the time of annexation; (8) the City represented to Bopp that the sign permit application was approved without conditions; and (9) Bopp relied on the representations of the City in building the wall sign and incurred a substantial expense. In its conclusions of law, the trial court concluded that the City "is not entitled to equitable relief because it has unclean hands," and "the City's actions estopped it from enforcing the sign ordinance."

At trial, Summers testified that he received a drawing from Kyle Hultz ("Hultz") at AAA Sign Company, acting on behalf of Bopp, in July 1998 for a permit to construct a new wall sign. Summers rejected this drawing. He informed Hultz, in writing on the drawing, that the "total sign area for restaurant site = 160 sq. ft." and that the "maximum building sign area permitted" was 120 square feet. Additionally, in a hand-written note on a fax cover sheet, he informed Hultz that the "proposed building signage exceeds the maximum allowed which is 120 sq. ft. Sign area is determined by enclosing the letters by a rectangle." Summers testified that he also spoke with Hultz regarding the calculation of the wall sign's size in accordance with the City's ordinance. Summers informed Hultz that the square footage was "over what was allowed" by ordinance. Summers also testified that he met with Bopp in his office regarding the wall sign. The nature of

that discussion is disputed by the parties. Summers testified it centered on the size of the wall sign, and that under the ordinance Bopp could have up to 150 square feet of signage on the building.[1] Additionally, Summers testified that he and Bopp discussed the pole sign, and Bopp stated he would be removing it.

Notwithstanding the fact that the second drawing indicated the size of the wall sign to be 127.18 square feet, the City issued Bopp a permit. Summers testified that his review of the second drawing submitted by AAA served as the basis for issuing the permit. According to Summers, he did not place any language on the permit regarding the old pole sign because of Bopp's oral representations. (The written permit approved by the City contains a section which addresses existing ground signs, but that section was left blank.) At trial, Summers also testified that the pole sign did not comply with the City's sign ordinance, but the City had not taken steps to require its compliance. He considered the pole sign to be "grandfathered." Finally, Summers admitted that the sign permit was validly issued and the wall sign, as built, complies with the drawing on which the permit was granted. Summers stated the sign permit has not been revoked.

Hultz testified that after his first drawing of the wall sign was rejected, he submitted a second drawing in compliance with the measurements provided by the City. The City then approved his second drawing.

Bopp testified that he relied on Summers, and the only square footage limitation communicated to him related to the wall sign. No one ever told him there was a square footage limitation for the property. Bopp denied speaking with Summers

in person regarding the sign permit. Rather, Bopp testified that he met with Summers when he "first got the elevation of the building back in 1996." According to Bopp, no one ever told him that he had to remove the pole sign prior to the time the new sign was completed, and he further denied having told anyone with the City that he would take the old sign down. The City issued Bopp a permit, without any conditions, to construct the wall sign. Bopp then built the wall sign at a cost of $12,000. After the wall sign was constructed, Bopp was informed, by letter dated January 8, 1999, that a "sign has been installed or remains at the above property that does not meet the requirements" of article 3.1004, section C of the sign ordinance. Article 3.1004, section C states that it is unlawful "to change, modify, alter, or otherwise deviate from the terms and conditions of [a] sign permit without prior approval by the Building Official." Fredericksburg, Tex., Ordinances art. 3.1004, § C (1998).

More than a mere scintilla of evidence supports the trial court's findings regarding unclean hands and estoppel. In particular, considering only the evidence in support of the trial court's finding, the evidence establishes that the City's own conduct was marked by a want of good faith and violates principles of equity. *See Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex.2002) (explaining legal sufficiency review). The evidence also reflects that the City issued a valid permit without any conditions and Bopp relied on the permit by expending substantial monies to build a wall sign that complied with the permit. *See Maguire Oil Company, Inc.*, 69 S.W.3d at 368.

The City's evidence that Bopp represented he would remove the pole sign was

---

1. It appears that Bopp was given two different maximum square footage figures for the wall sign. The 150 square foot maximum is different from the 120 square foot maximum originally communicated to Hultz in writing on the drawing.

disputed, and the trial court chose to believe Bopp. We must defer to the trial court on credibility issues. *See Lifshutz v. Lifshutz,* 61 S.W.3d 511, 515 (Tex.App.-San Antonio 2001, pet. denied). Accordingly, considering all the evidence, we cannot say that the evidence in support of the trial court's findings regarding unclean hands and estoppel is so weak as to be clearly wrong and manifestly unjust.

The City maintains that estoppel cannot be asserted against a governmental entity exercising its governmental functions. Generally, a governmental entity will not be estopped when it is acting in its governmental capacity or exercising its governmental powers. *See City of Hutchins v. Prasifka,* 450 S.W.2d 829, 835 (Tex. 1970); *Houston Lighting & Power Co. v. City of Wharton,* 101 S.W.3d 633, 639 (Tex. App.-Houston [1st Dist.] 2003, pet. filed). This is not true, however, where justice requires it and no governmental function is impaired. *City of Hutchins,* 450 S.W.2d at 836; *Roberts v. Haltom City,* 543 S.W.2d 75, 80 (Tex.1976); *City of Wharton,* 101 S.W.3d at 639. At minimum, it is recognized that a governmental entity, like any litigant, must do equity when seeking equitable relief. *See Truly,* 744 S.W.2d at 938; *City of Dallas v. Rosenthal,* 239 S.W.2d 636, 646 (Tex.Civ.App.-Dallas 1951, writ ref'd n.r.e). We consider the totality of the circumstances to determine whether "justice, honesty and fair dealing" require the application of this exception. *Truong v. City of Houston,* 99 S.W.3d 204, 212 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

In applying for a sign permit for the wall sign, Bopp was not informed he had to remove the pole sign. In fact, the City considered the pole sign "grandfathered." The permit, on its face, makes no mention of the old pole sign. In addition, Bopp was told he had 120 square feet for his new sign. Relying on his permit, Bopp then built a wall sign expending substantial monies. It was only after he built his wall sign that the City informed him he was in violation of the sign ordinance. In particular, the City informed Bopp that he was deviating from the "terms and conditions" of the permit. Yet, the specific terms of the permit as to square footage were undisputably followed. Notwithstanding the issuance of a valid permit that has not been revoked, the City now seeks Bopp's compliance with a maximum square footage allowance considering both his signs. Given these circumstances, we conclude that justice requires the application of estoppel and unclean hands. *See Roberts,* 543 S.W.2d at 80; *Maguire Oil Co.,* 69 S.W.3d at 367–68.

In addition, there is no evidence in this record that a governmental function would be impaired if we were to apply equitable estoppel. The City's expert, Dan Sefko, gave general testimony regarding the general purpose of sign ordinances and their relation to public safety, stating that signs can become a distraction and a hazard. Sefko also testified that a city's general purpose behind enforcing a sign ordinance is to prevent unfair advantages between businesses. Sefko, however, did not testify that Bopp would have an unfair business advantage or that Bopp's signs constituted a hazard. In fact, he testified that he had not been to Fredericksburg to look at the sign. Appropriately, the trial court also found that "there is no evidence that the pole sign and wall sign are not proportionate to the building area or not aesthetically pleasing." Moreover, there is no evidence that the application of equitable defenses to the particular circumstances presented would impair the City's ability to enforce its sign ordinance in the future. *See Maguire Oil Co.,* 69 S.W.3d at 368 (citing *Dallas County Flood Control*

**224**

*Dist. No. 1 v. Cross,* 815 S.W.2d 271, 284 (Tex.App.-Dallas 1991, writ denied)). We hold that the City is subject to the equitable defenses of estoppel and unclean hands. Accordingly, the trial court did not err in denying the City's declaratory judgment and permanent injunction against Bopp.

### CROSS–ISSUES

The trial court found that the City did not have a procedure in place to comply with Chapter 216 of the Texas Local Government Code regarding the removal, relocation, or reconstruction of a commercial sign. As part of its conclusions of law, the trial court concluded that Chapter 216 applied to the facts of this case, but denied Bopp's claim for declaratory judgment that the City's sign ordinance conflicts with Chapter 216 of the Texas Local Government Code and is therefore unenforceable. On appeal, Bopp contends that the trial court should have granted his claim for declaratory judgment and attorney's fees. We disagree.

The controlling findings of fact made by the trial court address and support the equitable defenses asserted by Bopp. Based on those findings, the trial court properly denied the City's claims and ordered Bopp's pole and wall signs to remain. Accordingly, the trial court never had to reach Bopp's claim for declaratory judgment that the City's sign ordinance was unenforceable against him. Similarly, we need not address Bopp's declaratory judgment action because it is an alternative theory for denying the City's claims and affirming the trial court's judgment. *See* TEX.R.APP. P. 47.1 (stating court of appeals must hand down an opinion that addresses every issue raised and necessary to final disposition of appeal); *City of San Antonio v. Rodriguez,* 856 S.W.2d 552, 555 (Tex.App.-San Antonio 1993, writ denied). Thus, we do not reach Bopp's cross-issues.

### CONCLUSION

We hold that the evidence supporting the trial court's findings regarding unclean hands and estoppel is both legally and factually sufficient. Additionally, we hold that the City is subject to these equitable defenses because justice requires it and, further, no governmental function is impaired under the facts of this case. We overrule the City's issues on appeal and affirm the judgment of the trial court without reaching Bopp's cross-issues.