

# IN THE
# TENTH COURT OF APPEALS

No. 10-10-00267-CV

PRICE OTHO HUBBARD, JR.,

Appellant

 v.

MARC G. ROSENTHAL, ROSENTHAL
& WATSON, P.C., ROBERT W. LEE, ERNEST
GARCIA, SCOTT HENDLER, DWIGHT E.
JEFFERSON, AND ROSHAUNDA DESHAE HAMILTON,

Appellees

From the County Court at Law No. 1
Brazos County, Texas
Trial Court No. 13,207-PC

# MEMORANDUM OPINION

This dispute involves a probate court's apportionment of $100,000 received from

the settlement of a wrongful-death and survival action. Raising seven issues, Appellant

Price Otho Hubbard Jr. complains about the apportionment. We will affirm.

## BACKGROUND

This case arose out of a house fire in February 2006 that left three children dead

and another severely injured. Among the children killed was nine-year-old Brandon Hubbard, who died after running back into the house to save another child. Brandon's mother, Roshaunda Hamilton, in her individual capacity and as a representative of Brandon's estate, brought a wrongful-death and survival action in federal court in July 2006, asserting that the fire was caused by faulty electrical components and alleging negligence, gross negligence, and product-liability claims. The lawsuit was litigated for more than a year and a half.

In February 2008, the parties confidentially settled all their claims. United States District Judge Vanessa D. Gilmore appointed a guardian ad litem and conducted a settlement conference. Judge Gilmore approved the settlement on April 9, 2008, and a few weeks later, she signed an agreed take-nothing judgment. Brandon's estate received $100,000 from the settlement.

About a month after Judge Gilmore signed the agreed take-nothing judgment, Price, Brandon's biological father, filed a "Motion to Vacate Judgment, Motion to Intervene, and Request for Temporary Restraining Order."[1] He also alleged claims of fraud-on-the-court, racketeering, fraud, theft, and conversion. Judge Gilmore immediately held a hearing on Price's motions and stated that she did not see any fraud. She did believe, however, that the relief Price sought was a matter that should be resolved in a probate court and thus ordered that the $100,000 in settlement funds be

---

[1] Appellees note that Price and Roshaunda never married and that Price did not attend Brandon's funeral. They also contend that Price had no role in Brandon's life, an allegation that Price disputes. Appellees also contend that Price was invited to participate in the lawsuit several times but only got involved once the $100,000 settlement was reached. Price counters by arguing that he "was unaware of this lawsuit until after the date of the Judgment, when he began hearing rumors that Ms. Hamilton was to receive a considerable sum of money as [a] result of their son's death."

deposited in the registry of a probate court so that it could determine how the proceeds should be distributed. Judge Gilmore then dismissed Price's motions as moot.

Roshaunda thus sought the appointment of a temporary administrator in Brazos County Court at Law No. 1, sitting in probate. Roshaunda's application noted that her son died intestate and that there was a dispute over the $100,000 in settlement funds. The probate court entered an order appointing Roshaunda as temporary administrator of Brandon's estate and directed her to deposit the $100,000 in settlement funds in the probate court's registry.

Next, Price filed an original petition in the probate court against Appellees Roshaunda Hamilton, Marc G. Rosenthal, Rosenthal & Watson, P.C., Ernest Garcia, Scott Hendler, Dwight E. Jefferson, and Robert W. Lee, Roshaunda's attorney in the federal lawsuit. Price asserted claims of theft, fraud, conversion, breach of fiduciary duty, and conspiracy, some of which he had attempted to bring in federal court, and specifically alleged that Roshaunda and her lawyers had wrongfully converted the $100,000 in settlement funds from Brandon's estate.

The probate court then entered an order granting letters of administration, concluding that Roshaunda and Price were unsuitable to serve as administrators and appointing Roy Brantley as the estate's dependent administrator. Brantley, an uninterested third party, had practiced law for more than twenty-five years, was board-certified in personal-injury trial law, and 30% of his practice involved probate litigation.

Stating that he was an heir to Brandon's estate and that he was acting on behalf of Brandon's estate, Price then moved for declaratory relief from the probate court that

he had standing to represent Brandon's estate against Appellees. He also filed a second motion for declaratory relief, seeking attorney's fees and costs of court and a finding that any claims that could be made by the estate were not barred by res judicata or limitations.

Thereafter, Brantley filed a notice of child-support liens against Price. The filing indicated that Price owed the Office of the Attorney General $31,055.33 in back child support, including $6,235.18 to Roshaunda. Brantley also tendered to the probate court a nineteen-page, single-spaced report documenting his investigation of the issues pertaining to Brandon's estate. The report included Brantley's interviews of the parties and provided a legal analysis of Price's claims and Brantley's recommendations to the probate court. Brantley noted that: (1) Price sustained no injury because the settlement proceeds were placed in the registry of the probate court; and (2) Price's fraud claim was brought in his motion to intervene and thus was not preserved when Price failed to appeal the federal court's denial of his motion to intervene. Brantley also analyzed the various claims for attorney's fees, concluded that the estate's $100,000 settlement was reasonable, and determined that "there are no viably pursuable claims that justify estate time and resources to be pursued."

Brantley's recommendations included the following:

1. Price and Roshaunda take equal shares of the estate pursuant to section 38 of the Texas Probate Code, *see* TEX. PROB. CODE ANN. § 38 (West 2003);

2. Their share of the remainder of the estate is subject to the expenses allowed by section 242 of the Texas Probate Code, *see id.* § 242 (West 2003); and

3. Price and Roshaunda should share in the remainder of the estate equally,

though Price's share is subject to monies owed to the Texas Attorney General's Office for back child-support owed to a number of people, including Roshaunda.

Price has argued throughout that Brantley's report was unnecessary and full of errors.

Once Brantley filed his report, several parties moved for summary judgment, but those motions became moot and thus irrelevant to this appeal. Price eventually non-suited his individual claims, leaving only the estate's distribution of the settlement and Price's claims on behalf of Brandon's estate for consideration by the probate court.

After an April 23, 2010 hearing on all pending motions, the probate court entered a final judgment that included the following pertinent rulings:

2. Plaintiff's [Price] request for declaratory judgment allowing him to prosecute claims on behalf of the Estate is denied; Plaintiff is not authorized to pursue any claims on behalf of the Estate.

3. The Dependent Administrator, Roy Brantley[,] is ordered not to pursue claims for theft, conversion, breach of fiduciary duty, conspiracy[,] or fraud on behalf of the Estate against any Defendant … .

4. As there is no pleading that supports Plaintiff's request for declaratory judgment that Plaintiff's individual claims are not barred by res judicata or the statute of limitations, the Court denies the Plaintiff's Request for Declaratory Judgment … .

The probate court further concluded that: (1) Brantley's request for $16,649 in attorney's fees was necessary and reasonable and should be paid from the $100,000 in estate funds; (2) Lee's 40% contingency-fee arrangement was reasonable and necessary and that $40,000 be paid to Lee from estate funds; and (3) Roshaunda's probate attorney Fred Davis's request for $18,976.66 in attorney's fees was reasonable and necessary and should also be paid from estate funds. The probate court then ordered that the

remaining $24,374.34 in estate funds be split evenly by Roshaunda and Price, but noted that Price's share was payable to the Attorney General's Office for unpaid child support.

Price contends in seven issues that the probate court: (1) should have granted declaratory judgment that he has standing to bring claims on behalf of the estate after Brantley refused to bring any claims; (2) should have granted declaratory judgment regarding the effect of a federal-court judgment; (3) should have found that he stated legitimate claims against Appellees; (4-5) abused its discretion in awarding a share of the settlement and attorney's fees to Roshaunda; (6) awarded excessive attorney's fees to Brantley; and (7) abused its discretion in apportioning the settlement and denying him attorney's fees.

## STANDING OR CAPACITY

In his first three issues, Price argues that the probate court should have granted his request for declaratory judgment: (1) that he has standing to bring claims on behalf of Brandon's estate; (2) regarding the effect of the federal court judgment; and (3) that he asserted legitimate claims against Roshaunda and her attorneys. Much of Price's arguments center on his allegations that Roshaunda and her attorneys engaged in wrongful acts that caused harm to Brandon's estate and on Brantley's refusal to file suit on behalf of the estate.

Appellees respond that Price confuses standing and capacity and that he does not have capacity to bring claims on behalf of the estate; Brantley had the exclusive right to bring such claims on behalf of the estate. Appellees also argue that because

Price's claims are not valid, his request for declaratory relief is meritless.

***Applicable Law***

A party must have both standing to sue and capacity to sue. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). "Standing is a constitutional prerequisite to maintain suit in either federal or state court." *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001). "For a plaintiff to have standing, a controversy must exist between the parties at every stage of the legal proceedings, including the appeal." *Id.* at 184. If a controversy ceases to exist, then the case becomes moot. *Id.*

"[T]he issue of capacity 'is conceived of as a procedural issue dealing with the personal qualifications of a party to litigate.'" *Lovato*, 171 S.W.3d at 848 (quoting 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil 2d 1159, at 441 (2d ed. 1990)). "[A] party has capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Id.* at 848-49; *see El T. Mexican Rests. v. Bacon*, 921 S.W.2d 247, 250 (Tex. App.—Houston [1st Dist.] 1995, no writ) (stating that capacity is party's legal authority to go into court to prosecute or defend suit). Standing may be raised for the first time on appeal, but capacity must be raised by verified plea in the trial court or else it is deemed waived. *See Lovato*, 171 S.W.3d at 849; *see also Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 56 (Tex. 2003).

Generally, a personal representative of the decedent's estate is the only person with capacity to sue to recover estate property. *See Shepherd v. Ledford*, 962 S.W.2d 28, 31 (Tex. 1998); *see also Lovato*, 171 S.W.3d at 850. Section 3(aa) of the Texas Probate Code

provides that a "personal representative" includes the administrator. TEX. PROB. CODE ANN. § 3(aa) (West Supp. 2011). The Probate Code also provides that suits for the recovery of personal property, debts, or damages and suits for title or possession of lands or for any right attached to or growing out of the same or for injury or damage done thereto may be instituted by executors or administrators appointed in this state; and judgment in such cases shall be conclusive, but may be set aside by any person interested for fraud or collusion on the part of such executor or administrator. *See id.* § 233A (West 2003); *see also Graff v. 2920 Park Grove Venture, Ltd.*, No. 05-07-01607-CV, 2009 WL 3260886, at *2 (Tex. App.—Dallas Oct. 13, 2009, pet. denied) (mem. op.).

Price relies on an exception to this general rule for situations "in cases where, there being an administration, it appears that the administrator will not or cannot act, or that his interest is antagonistic to that of the heirs desiring to sue." *Chandler v. Welborn*, 156 Tex. 312, 294 S.W.2d 801, 806 (1956); *see Mayhew v. Dealey*, 143 S.W.3d 356, 370-71 (Tex. App.—Dallas 2004, pet. denied) (recognizing two exceptions to general rule, the second being that heirs may bring suit on behalf of estate when personal representative cannot or will not bring suit or when personal representative's interests are antagonistic to estate's).

"Heirs" are "those persons … who are entitled under the statutes of descent and distribution to the estate of the decedent who dies intestate." TEX. PROB. CODE ANN. § 3(o). It is undisputed that Price is Brandon's heir, and the record reflects that Brandon's estate needed to be probated; that Brantley was appointed as the dependent administrator of Brandon's estate; and that Brantley decided to not pursue Price's

claims against Roshaunda and her lawyers on behalf of the estate. Thus, the crux of this issue is whether the second exception applies—whether Brantley's interests were antagonistic to those of the estate. *See Chandler*, 294 S.W.2d at 806; *see also Mayhew*, 143 S.W.3d at 370-71.

### Discussion

Price relies heavily on *Mayhew*, 143 S.W.3d 356, which arose after an elderly man was murdered and his son was the prime suspect. On behalf of the decedent's estate, the decedent's daughter sued the son for wrongful-death and survival damages, but the daughter was not the estate's executor. The jury found that the son had killed his father and inflicted severe emotional distress on him in the months before his death and awarded damages to the estate and the daughter. *Id.* at 359-65. The appellate court concluded that the daughter had standing to bring suit on behalf of the estate because the executor had filed an affidavit simply stating "that he would not bring a lawsuit in connection with the claims asserted … on behalf of the estate." *Id.* at 370-71.

The facts in *Mayhew* are thus quite dissimilar to this case. Here, Brantley provided a detailed report indicating that he carefully considered all of Price's allegations, and only after a careful analysis of the claims did he decline to bring suit. In *Mayhew*, the executor summarily stated that he did not intend to bring suit despite ample evidence supportive of a wrongful-death and survival action, thereby demonstrating that the executor's actions were antagonistic to the interests of the estate. *Id.* Also, in this case, Price's capacity was challenged, not his standing. It is undisputed that Price has standing as an heir to Brandon's estate, but the crux of the matter centers

on whether Price has capacity to bring suit when Brantley was the individual whom the probate court appointed to represent Brandon's estate. In *Mayhew*, the court addressed only standing. *Id.* Finally, Price does not direct us to any evidence indicating that the interests of Brantley, the dependent administrator, were antagonistic to those of Brandon's estate.

Moreover, Brantley did not simply refuse to bring suit. He tendered a detailed nineteen-page report documenting all of Price's allegations, and Price only summarily argues that Brantley's report is fraught with errors and was unnecessary. Nor did Price proffer evidence supporting his claims. In particular, we, like the federal court and probate court, fail to see any harm to the estate if Price were indeed correct that Roshaunda and her attorneys engaged in a purposeful plan to defraud the estate and to convert the settlement proceeds. The record shows that the settlement was for $100,000 and that the exact same amount was deposited into the probate court's registry in accordance with the federal court's and probate court's orders. And importantly, the record does not support a finding that Roshaunda refused to return the property that was allegedly converted.[2] Roshaunda testified that, although the settlement proceeds were initially deposited in her account, she did not spend any of the money and immediately deposited the funds in the probate court's registry once she was ordered to do so. Further, Price's disagreement with Brantley's assessment of Price's claims does not mean that Brantley's actions were antagonistic to *Brandon's* estate. For all these

---

[2] Among his many claims, Price asserted conversion, which required him to prove that the plaintiff demanded return of the property and that *the defendant refused to return the property*. *Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 341 (Tex. App.—Austin 2004, no pet.).

reasons, we conclude that the exception that Price relies on does not apply and that Price did not have capacity to bring suit on behalf of Brandon's estate.

Within his third issue, Price complains about the probate court's failure to file findings of fact and conclusions of law. Price, however, did not file a separate request for findings of fact or conclusions of law after the final judgment was entered, nor did he notify the probate court that its findings of fact and conclusions of law were past due. *See* TEX. R. CIV. P. 296, 297; *Stangel v. Perkins*, 87 S.W.3d 706, 709 (Tex. App.—Dallas 2002, no pet.) (failure to timely and properly request findings and conclusions does not preserve error); *see also Gnerer v. Johnson*, 227 S.W.3d 385, 389 (Tex. App.—Texarkana 2007, no pet.) (failure to file notice of past due findings and conclusions does not preserve error). We overrule his first three issues.

## PAYMENTS TO LEE AND ROSHAUNDA

Price's fourth issue contends that the probate court abused its discretion in not imposing a constructive trust based on his allegation that Lee and Roshaunda had unclean hands. This issue hinges upon a finding that Lee and Roshaunda engaged in wrongdoing or, in other words, a finding that Price's various claims have merit, which the probate court rejected.

"'Constructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice.'" *Holmes v. Kent*, 221 S.W.3d 622, 628 (Tex. 2007) (quoting *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974)). "'A constructive trust is a relationship with respect to property, subjecting the person by whom the title to the property is held

to an equitable duty to convey it to another, on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property.'" *Baker Botts, L.L.P. v. Cailloux*, 224 S.W.3d 723, 736 (Tex. App.—San Antonio 2007, pet. denied) (quoting *Talley v. Howsley*, 142 Tex. 81, 176 S.W.2d 158, 160 (1943)). The elements of establishing entitlement to a constructive trust are: (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Cote v. Texcan Ventures II*, 271 S.W.3d 450, 453 (Tex. App.—Dallas 2008, no pet.).

Essentially, courts impose a constructive trust where a party has been unjustly enriched. *See Holmes*, 221 S.W.3d at 628; *see also Cailloux*, 224 S.W.3d at 736. Here, there is no evidence that either Lee or Roshaunda were unjustly enriched. The record reflects that Lee had a 40% contingency-fee agreement with Roshaunda on the underlying products-liability claim. Lee was therefore entitled to 40% of the $100,000 settlement ($40,000), and the probate court awarded Lee $40,000 in attorney's fees. The probate court awarded Roshaunda one-half of the remaining proceeds in the estate after all the attorney's fees had been paid, which resulted in a payment of $12,187.17—the same amount that Price was awarded. We cannot say that either Lee or Roshaunda was unjustly enriched to necessitate the imposition of a constructive trust.

To the extent that Price argues that a constructive trust should be imposed because of unclean hands, we note that neither Lee nor Roshaunda sought an equitable remedy in the probate court, and the record does not reflect any harm to the estate; thus, the doctrine of unclean hands does not apply. *See City of Fredericksburg v. Bopp*,

126 S.W.3d 218, 220-21 (Tex. App.—San Antonio 2003, no pet.) ("A party seeking an equitable remedy must do equity and come to court with clean hands. The doctrine of unclean hands applies to a litigant whose own conduct in connection with the same matter or transaction has been unconscientious, unjust, marked by want of good faith or violates principles of equity and righteous dealing. A party seeking to invoke this equitable doctrine must show that he has been seriously harmed and the wrong complained of cannot be corrected without applying the doctrine.") (internal citations omitted). Accordingly, we overrule Price's fourth issue.

### ROSHAUNDA'S ATTORNEY'S FEES

In his fifth issue, Price contends that the probate court erred in awarding attorney's fees to Davis, Roshaunda's probate attorney. Specifically, Price complains that "the vast majority of [Davis's] fees were incurred after Defendant Hamilton was removed as temporary administrator, and they were incurred for reasons wholly unrelated to the administration of the Estate." Price further argues that the probate court "had no authority to award attorney['s] fees to Defendant Hamilton for these unrelated reasons" and that "Defendant Hamilton incurred her attorney fees trying to protect herself from her own wrongdoing, thus her claim should have been barred both as a matter of law and equity."

The probate court awarded Davis $18,976.66 in attorney's fees incurred in his representation of Roshaunda. She had hired Davis because the federal court ordered that the matter be resolved in the probate court and Lee, Roshaunda's trial lawyer, stated that he did not have the expertise to handle probating the estate. When the

matter was first filed in the probate court on June 6, 2008, Roshaunda was appointed as temporary administrator of the estate, but she was later removed.

At the April 23, 2010 hearing, Roshaunda proffered Davis's billing statements, which indicated that, during the time that she served as temporary administrator for the estate, Roshaunda incurred $7,651.54 in attorney's fees. At the hearing, Davis testified that he was board-certified in civil-trial and personal-injury law; that he had been practicing for thirty-eight years; and that he charged $250 per hour, which, according to Davis, was a reasonable rate in Brazos County for an attorney of his experience and qualifications.

> Section 242 of the Probate Code provides:
>
> Personal representatives of estates shall also be entitled to all necessary and reasonable expenses incurred by them in the preservation, safekeeping, and management of the estate, and in collecting or attempting to collect claims or debts, and in recovering or attempting to recover property to which the estate has a title or claims, and all reasonable attorney's fees, necessarily incurred in connection with the proceedings and management of such estate, on satisfactory proof to the court.

TEX. PROB. CODE ANN. § 242. As temporary administrator of the estate, Roshaunda was entitled to recover all reasonable attorney's fees that she incurred in connection with her management of the estate, on satisfactory proof to the probate court.

As for the remaining awarded amount of $11,325.12, which Davis testified was reasonable and necessary and which was supported by Davis's billing statements, the Appellees asserts that this amount was justified because Roshaunda filed a counterclaim for declaratory relief in response to Price's numerous claims. Section

37.009 of the Civil Practice and Remedies Code authorizes a judge to award reasonable and necessary attorney's fees in her discretion—"as are equitable and just"—in a declaratory-judgment action. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008); *see Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (holding that review of statutory award of attorney's fees is for abuse of discretion); *see also R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694, 706 (Tex. App.—Waco 2008, pet. denied) (same). "Whether to award attorney's fees, and to which party, is a decision that is solely within the trial court's discretion and will not be reversed absent a clear abuse of that discretion." *Sammons v. Elder*, 940 S.W.2d 276, 284 (Tex. App.—Waco 1997, writ denied). Based on the record, we cannot say that the probate court abused its discretion in awarding $7,651.54 in attorney's fees to Davis for Roshaunda's legal expenses as the temporary administrator of Brandon's estate and $11,325.12 in attorney's fees to Davis under section 37.009. We overrule Price's fifth issue.

## THE ADMINISTRATOR'S FEES

In Price's sixth issue, he complains that "the trial court awarded excessive fees to the Administrator, and any fees should be assessed against [Roshaunda]." In this issue, Price has two subparts: that the services were neither "necessary nor reasonable" and that, even if they were, "as a matter of law and equity, [the administrator's fee should] be assessed against" Roshaunda.

For the first subpart, Price argues that all Brantley needed to do was state that he did not intend to pursue any other claims on behalf of the estate, specifically those claims that Price wanted to pursue on behalf of the estate. As presented, Price's

argument is that there was no reason for Brantley to investigate the claim before making this decision. In making this argument, Price argues that the administrator did not need to investigate the claims or prepare the report and further asserts that the report was conclusory and "just plain wrong."

The probate court authorized Brantley to investigate Price's allegations with "due diligence," and it was within the probate court's discretion to accept Brantley's testimony and to reject Price's counsel's conclusions and testimony. *See Paul v. Merrill Lynch Trust Co.,* 183 S.W.3d 805, 812 (Tex. App.—Waco 2005, no pet.). The question of whether it was reasonable or necessary to investigate the claims that Price thought should be pursued and whether there was a need to reduce Brantley's due diligence in his investigation to writing in the form of his report were fact issues to be resolved by the probate court. On the record before us, we cannot say that the probate court's conclusion was not adequately supported by the record.

In the second subpart, Price generally argues that the fees should be assessed against Roshaunda, instead of the estate, because the entire proceeding was necessitated by her misconduct. We note that there has been no finding that Roshaunda and her attorneys engaged in any wrongdoing. Further, to the extent that Price has made those arguments in this appeal, we have determined those issues against him. Thus, the probate court did not err by not assessing the administrator's fee against Roshaunda.

Having determined that the probate court did not err in either subpart of issue six as presented and argued, we overrule Price's sixth issue.

## APPORTIONMENT OF THE ESTATE

In his seventh issue, Price asserts that the probate court abused its discretion in apportioning Brandon's estate. This complaint specifically centers on the probate court's refusal to award him attorney's fees.

Price initially asserts that he requested attorney's fees in the trial court and provided a legal justification for his request (he filed a motion in the probate court for attorney's fees and further declaratory relief). He then argues that it was his efforts that resulted in the estate's recovery of the $100,000 settlement and that a failure to award him any attorney's fees out of estate funds cannot be an equitable apportionment of the estate.

As we have noted, the probate court specifically declined to grant Price any declaratory relief, and we have found no error in that regard. Accordingly, the probate court could not have abused its discretion in refusing to award Price attorney's fees out of estate funds under section 37.009 of the Civil Practice and Remedies Code. *See In re Estate of Kuykendall*, 206 S.W.3d 766, 772 (Tex. App.—Texarkana 2006, no pet.) ("Indeed, the authorities make it clear that the trial court may decide it is not equitable or just to award attorney's fees even where it is stipulated or the evidence is uncontroverted that attorney's fees were incurred and they are reasonable and necessary. The trial court's decision whether to award attorney's fees in a declaratory judgment case depends on the court's conclusion whether it is just and equitable to do so under all the circumstances of the case, not on the quantum of proof as to the amount incurred or the reasonableness and necessity of such fees.").

As additional support for an award of attorney's fees, Price briefly refers to Probate Code section 378B(a). Price makes no argument, however, on how this section could apply to his request for attorney's fees, and we do not see how it could apply. *See* TEX. PROB. CODE ANN. § 378B(a) (West Supp. 2011). He also cites Probate Code section 242, but that section provides for the recovery of attorney's fees by the estate's personal representative, and Price was not the personal representative. We overrule his seventh issue.

## CONCLUSION

Having overruled all of Price's issues, we affirm the judgment of the probate court.

REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed May 30, 2012
[CV06]