

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00341-CV

**BOARD OF ADJUSTMENT FOR THE CITY OF SAN ANTONIO**
& Sarosh Management, LLC d/b/a A-Z Food Mart,
Appellants

v.

**EAST CENTRAL INDEPENDENT SCHOOL DISTRICT**,
Appellee

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-17596
Honorable Laura Salinas, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  March 18, 2015

AFFIRMED

After the Planning and Development Services Director for the City of San Antonio revoked a certificate of occupancy issued to Sarosh Management, LLC d/b/a A-Z Food Mart, Sarosh Management appealed the Director's decision to the Board of Adjustment for the City of San Antonio. The Board voted to overturn the Director's decision, and East Central Independent School District filed a petition for writ of certiorari in the trial court to challenge the Board's decision. Sarosh Management and the Board appeal the trial court's judgment setting aside the Board's decision. Constrained by controlling precedent, we affirm the trial court's judgment.

**BACKGROUND**

In August of 2008, Sarosh Management contracted to purchase property on which it intended to operate a convenience store. The purchase was conditioned on Sarosh Management obtaining a license to sell alcoholic beverages from the Texas Alcoholic Beverage Commission and a permit to install underground storage tanks.

In its application for the license to sell alcoholic beverages, Sarosh Management disclosed that the property was located within 300 feet of a school. Sarosh Management also sent a letter to the school's principal informing the school of its intentions. Upon obtaining the license and permit, Sarosh Management closed on the purchase of the property and installed the underground storage tanks. Sarosh Management's initial investment in acquiring and developing the property totaled $337,800.00.

In April of 2009, Sarosh Management applied for a certificate of occupancy, listing the type of business as "convenience store w/alcoholic beverages," and the City of San Antonio issued the certificate of occupancy on April 30, 2009. In August of 2009, the Chief Building Inspector for Development Services reinspected the property and determined that the distance between the property line of the convenience store and the property line of the school was 90 feet, although the distance to the main school building was 475 feet. Based on these measurements, the Director revoked the certificate of occupancy, stating the certificate of occupancy was "issued in error" because the city ordinances prohibited alcoholic beverages from being sold on a premises located within 300 feet of a school.[1]

---

[1] The city ordinances provide, "No alcoholic beverages shall be sold for consumption on or off the premises where sold, when such premises are located within three hundred (300) feet of any church, school or hospital, the measurements to be made in the manner prescribed by V.T.C.A., Alcoholic Beverages Code, 109.33(b)." Section 109.33(b) provides, in relevant part, "The measurement of the distance between the place of business where alcoholic beverages are sold and the public or private school shall be . . . in a direct line from the property line of the public or private school to the property line of the place of business, and in a direct line across intersections." TEX. ALCO. BEV. CODE ANN. § 109.33(b) (West 2007).

As previously noted, Sarosh Management appealed the Director's decision to the Board which voted to overturn the Director's decision. The School District challenged the Board's decision by filing a petition for writ of certiorari, and the trial court entered a judgment setting aside the Board's decision. The Board and Sarosh Management appeal the trial court's judgment.

## STANDARD AND SCOPE OF REVIEW

A decision of a board of adjustment may be challenged by the filing of a petition in district court stating that the decision of the board is illegal in whole or in part and specifying the grounds of the illegality. TEX. LOC. GOV'T CODE ANN. § 211.011(a) (West 2008); *Bd. of Adjustment for City of San Antonio v. Kennedy*, 410 S.W.3d 31, 34 (Tex. App.—San Antonio 2013, pet. denied). "The district court sits only as a court of review, and the only question before it is the legality of the [board of adjustment's] order." *City of Dallas v. Vanesko*, 189 S.W.3d 769, 771 (Tex. 2006); *see also Kennedy*, 410 S.W.3d at 34. "'The board's order is presumed to be legal, and the party attacking the order has the burden of establishing its illegality.'" *Kennedy*, 410 S.W.3d at 34 (quoting *City of Alamo Heights v. Boyar*, 158 S.W.3d 545, 549 (Tex. App.—San Antonio 2005, no pet.). To establish that the board's order is illegal, "the party attacking the order must present a very clear showing of abuse of discretion." *City of Dallas*, 189 S.W.3d at 771 (internal citations omitted); *see also Kennedy*, 410 S.W.3d at 34. The board abuses its discretion if it acts without reference to any guiding rules and principles or clearly fails to analyze or apply the law correctly. *City of Dallas*, 189 S.W.3d at 771; *Kennedy*, 410 S.W.3d at 34.

With regard to factual matters, the reviewing court must not put itself in the position of the board and substitute its findings for those of the board even if the overwhelming preponderance of the evidence is against the board's decision. *City of Dallas*, 189 S.W.3d at 771; *Kennedy*, 410 S.W.3d at 35. A party attacking the legality of the board's order must establish that the board

could reasonably have reached but one decision, and not the decision it made. *City of Dallas*, 189 S.W.3d at 771; *Kennedy*, 410 S.W.3d at 35.

Whether a board of adjustment abused its discretion is a question of law for the trial court. *Kennedy*, 410 S.W.3d at 35. This court reviews a trial court's decision on a question of law de novo. *Id.*

## BOARD OF ADJUSTMENT'S RECORD

In its brief, Sarosh Management contends the Board's record was not forwarded to the trial court in the instant case; therefore, the trial court had nothing to review other than the presumption that the Board's order was legal. The School District responds that the record of the Board's decision was properly before the trial court. We agree with the School District.

When a petition is filed in the trial court challenging a decision of a board of adjustment, the trial court may grant a writ of certiorari requiring the board of adjustment to forward to the trial court its record of the decision being challenged. TEX. LOC. GOV'T CODE ANN. § 211.011(c) (West 2008); *City of San Antonio Bd. of Adjustment v. Reilly*, 429 S.W.3d 707, 710 (Tex. App.—San Antonio 2014, no pet.). In this case, the School District and the Director each filed a petition challenging the Board's decision in separate lawsuits. The trial court issued a writ of certiorari in the companion lawsuit filed by the Director, and the Board's record was forwarded and filed in that court. The School District then attached a copy of the Board's record to its motion for judgment in the underlying cause.

At the hearing on the School District's motion, the attorney for the Board referred to the Board's certified record of its decision and stated the trial court "has the complete file that has been duly certified." The Board's record and the documents and evidence it contained were referenced by all of the attorneys throughout the hearing. At the conclusion of the hearing, the trial court stated, "I'll send my decision after I review the file. Now, the entire file has been filed."

The School District's attorney clarified that the record was on file in the companion lawsuit filed by the Director, and the Board's attorney stated, "And for convenience—and I think that we have an agreement, that even though the Board's file is not filed in this case, it can be used on both cases." No objection was made to this statement. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (holding attorney's statements regarding existence of an agreement constituted evidence of agreement absent objection to trial court's failure to administer oath).

Having reviewed the record as a whole, we conclude that the Board's record was properly before the trial court, and we overrule Sarosh Management's issue.

## CITY'S PROCEDURAL REQUIREMENTS

The Board first contends that it did not abuse its discretion in overturning the Director's decision because the Director failed to follow the procedure for revoking permits set forth in Section 35-406 of the Unified Development Code.[2] Although the Board acknowledges that the Director relied on Section 110.4 of the 2006 International Building Code as authority to revoke the certificate of occupancy,[3] the Board contends Section 110.4 conflicts with Section 35.406, and the city code provides that provisions imposing greater restrictions on a subject matter control over provisions containing lesser restrictions. The School District responds that the Director's authority to revoke the certificate is contained in Section 110.4, and the two provisions are not in conflict.

Section 35-406 of the Unified Development Code sets forth a procedure for revoking a permit where the revocation results from (1) the intentional provision of materially misleading information by the applicant, or (2) the failure to comply with any condition of a development

---

[2] All parties agree that the 2009 version of Section 35-406 applies in this case. The applicable version of Section 35-406 is contained in the Board's record. Section 35-406 was subsequently amended in 2010.

[3] The 2006 edition of the International Building Code can be found at http://publicecodes.cyberregs.com/icod/ibc/2006f2/.

order or permit. Under Section 35-406, the department of code compliance is authorized to investigate alleged violations of permit conditions and to present the results of its investigation to the director of development services. If the director determines that the permit should be terminated or suspended, the director makes a recommendation to the board of adjustment which must then conduct a hearing on the matter.

Section 110.4 of the International Building Code, however, specifically addresses the revocation of a certificate of occupancy issued in error. Section 110.4 states:

> The building official is authorized to, in writing, suspend or revoke a certificate of occupancy or completion issued under the provisions of this code wherever the certificate is issued in error, or on the basis of incorrect information supplied, or where it is determined that the building or structure or portion thereon is in violation of any ordinance or regulation or any of the provisions of this code.

In this case, the testimony presented to the Board established that the certificate of occupancy was issued to Sarosh Management in error. The letter sent by the Director and presented to the Board as evidence stated that the certificate was issued in error. In addition, the Chief Building Inspector for Development Services testified as follows:

> It was issued both in error administratively and as — the inspector also went out there to inspect, a visual inspection, and it was issued in error.
> And the reason I'm saying is because the front of the property is vacant and it appears to be different lots. But the school property is, in fact, an irregular lot size and it comes all the way up to the street.
> So if you measure from the street, directly across, it is within 75 feet — within 300 feet. And both — it was issued both administratively when they came in to apply and it was failed to observe that it was within 300 feet, and when the inspector when out, the same error was made.

Because the certificate was revoked because it was issued in error, not based on a failure to comply with a condition of the certificate, the procedure for revocation contained in Section 110.4 of the International Building Code applied. Accordingly, the Board's contention that the Director was required to follow the revocation procedure set forth in Section 35-406 of the Unified Development Code applied is overruled.

### DUE PROCESS

Sarosh Management and the Board argue that Sarosh Management had a protected property interest in the certificate of occupancy and the failure to provide Sarosh Management with notice and a hearing before the certificate was revoked violated its constitutional right to due process. The School District contends Sarosh Management did not have a protected property interest because the certificate of occupancy was void.[4]

Our decision on this issue is governed by precedent established by the Texas Supreme Court in *City of Amarillo v. Stapf*, 129 Tex. 81, 101 S.W.2d 229 (1937). In *Stapf*, the City of Amarillo had a comprehensive zoning ordinance that created a first manufacturing district and a second manufacturing district and enumerated the various buildingS and uses permitted in each district. 101 S.W.2d at 230. Sometime after the zoning ordinance was adopted, the appellee applied for a permit to move a foundry to a location zoned as first manufacturing district. 101 S.W.2d at 230–31. Although the building inspector initially issued the permit, the building inspector canceled the permit the day after its issuance because a foundry was a second manufacturing district building or use. *Id.* at 231. One question presented on appeal was whether the revocation of the permit was illegal and void. *Id.* at 232.

The Texas Supreme Court held that because the ordinance did not allow the foundry to be located in the first manufacturing district, "the action of the building inspector in granting the permit was unauthorized, and the permit was void." *Id.* at 232. The court further held that the appellee "could acquire no rights" under the void permit. *Id.*; *see also Swain v. Bd. of Adjustment of City of University Park*, 433 S.W.2d 727, 733 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.)

---

[4] The School District also contends the issue of due process was first raised in the trial court. We disagree. At the hearing before the Board, the attorney for Sarosh Management expressly argued "They have a property right. And if you're going to take it away, you've got to accord them due process rights. That's notice, the opportunity to be heard, and the decision-making process."

(holding permit issued in violation of ordinance is void ab initio and no rights were acquired by the permit holder); *Davis v. City of Abilene*, 250 S.W.2d 685, 687 (Tex. Civ. App.—Eastland 1952, writ ref'd) (holding permit issued in violation of ordinance was void and vested no rights in permit holder).

Sarosh Management and the Board cite two cases in support of their contention that they had a protected property interest in the certificate of occupancy. In neither of the cited cases, however, was a certificate of occupancy issued in violation of an ordinance. *See Jabary v. City of Allen*, 547 Fed. App'x 600, 602–03 (5th Cir. 2013); *City of Hous. v. Carlson*, 393 S.W.3d 350, 353–55 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although the Houston court in *Carlson* generally discussed the "bundle of rights" that are included with property ownership, 393 S.W.3d at 358, the argument in this case is that Sarosh Management had a protected property interest in the certificate of occupancy, not in its property. Moreover, to the extent *Carlson* is read to hold contrary to the Texas Supreme Court's holding in *Stapf*, we are bound by the Texas Supreme Court's holding. *See Lubbock Cnty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002).

Because the certificate of occupancy was issued in violation of the ordinance, the certificate was void, and Sarosh Management did not acquire any rights under the certificate. *See Stapf*, 101 S.W.2d at 232. Accordingly, Sarosh Management and the Board's due process arguments are overruled.

### ESTOPPEL

Sarosh Management next contends that the Director was estopped from revoking the certificate because of Sarosh Management's investment. As previously noted, Sarosh Management invested $337,800.00 in the property and improvements.

The Texas Supreme Court has "long held that a city cannot be estopped from exercising its governmental functions." *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 773 (Tex. 2006). "In general, the rule derives from our structure of government, in which the interest of the individual must at times yield to the public interest and in which the responsibility for public policy must rest on decisions officially authorized by the government's representatives, rather than on mistakes committed by its agents." *Id.* As a result, "the unauthorized act of a governmental official [generally] cannot estop a city's enforcement of zoning ordinances." *Id.* at 774 (citing *Stapf*, 101 S.W.2d at 232).

The Texas Supreme Court has adopted a limited exception to this general rule which allows a municipality to be estopped "where the circumstances clearly demand its application to prevent manifest injustice" and "there is no interference with the exercise of [the municipality's] governmental functions." *Id.* The court has applied this exception in only one circumstance where city officials affirmatively misled a party from timely filing a notice of claim. *Id.* at 774–75.

In *Super Wash, Inc.*, the court considered whether an exceptional case was presented that would estop a city from enforcing a zoning ordinance where the city mistakenly approved a site plan and issued a building permit contrary to the ordinance. *Id.* at 772. Within a week, the city discovered its mistake and informed the permit holder of the mistake and the changes required to conform with the ordinance. *Id.* The court held that the facts did not present an exceptional case, asserting, in part, that "while it is true the City issued the building permit in error, the Ordinance was a matter of public record and discoverable by Super Wash before it purchased the lot." *Id.* at 775; *see also T & R Assoc., Inc. v. City of Amarillo*, 688 S.W.2d 622, 629 (Tex. App.—Amarillo 1985, writ ref'd n.r.e.) (holding property owner "was charged with notice of the provisions of the zoning ordinance" and property owner relied "at its own peril" on unauthorized actions of building inspectors); *Swain*, 433 S.W.2d at 732 (holding unauthorized act in granting permit cannot create

estoppel against the citizens' right to require enforcement of zoning ordinance). The court further noted that "even if justice requires estoppel, a city will not be estopped if doing so would interfere with its ability to perform its governmental functions." *Super Wash, Inc.*, 198 S.W.3d at 776. "A city should not be estopped if doing so would hinder its ability to ensure public safety." *Id*. at 777.

Similar to the facts in *Super Wash*, *Inc.*, the certificate of occupancy in the instant case was issued in error, and the ordinance restricting the sale of alcoholic beverages within 300 feet of a school was a matter of public record. In addition, the certificate of occupancy was not issued until after Sarosh Management's investment in the property and improvements was complete. Accordingly, Sarosh Management did not rely on the certificate of occupancy at the time the investment was made, but only on the license issued by the Texas Alcoholic Beverage Commission. Finally, estopping the city from enforcing the ordinance in this case would hinder its ability to ensure public safety in areas surrounding schools. Therefore, we overrule Sarosh Management's contention that the city can be estopped from enforcing the ordinance under the circumstances in this case.

Sarosh Management cites this court's decision in *City of Fredericksburg v. Bopp*, 126 S.W.3d 218 (Tex. App.—San Antonio 2003, no pet.), as authority for estopping the enforcement of the ordinance. In *Bopp*, the issue presented was whether a restaurant violated an ordinance that restricted the maximum total signage area. 126 S.W.3d at 219–20. At the time the property was annexed by the city, "a free-standing pole sign advertising the restaurant existed on the property." *Id*. at 219. The restaurant was subsequently issued a permit to erect a wall sign which, when coupled with the pole sign area, exceeded the maximum total signage area. *Id*. The city later sued the restaurant owner seeking a permanent injunction enjoining the owner from continuing to violate the sign ordinance. *Id*. at 219–20. The trial court held the city was estopped from enforcing the ordinance, and this court affirmed. *Id*. at 224.

The facts in *Bopp*, however, are readily distinguishable from the instant case. In *Bopp*, the trial court expressly found that the pole sign was grandfathered at the time of annexation, and this court held the evidence "reflects that the City issued a valid permit," and the permit had not been revoked. 126 S.W.2d 221–22. In addition, the restaurant owner spent "substantial monies" on the wall sign "[r]elying on his permit." *Id*. at 223. As previously noted, the certificate of occupancy was not erroneously issued in the instant case until after Sarosh Management had purchased and improved the property. Third, the sign ordinance at issue in *Bopp* is vastly different than the ordinance restricting the sale of alcoholic beverages within 300 feet of a school in terms of ensuring public safety. Given these factual distinctions, we disagree that the circumstances in this case "clearly demand" that estoppel be applied "to prevent manifest injustice" or that estoppel would not interfere with the city's exercise of its governmental function to ensure public safety. *Super Wash, Inc.*, 198 S.W.3d at 774. Accordingly, we hold the city is not estopped from enforcing the ordinance restricting the sale of alcoholic beverages within 300 feet of a school.

**COLLATERAL ATTACK**

Sarosh Management next contends that the trial court erred in reversing the Board's decision because the School District is collaterally attacking the license issued by the Texas Alcoholic Beverage Commission. This contention ignores that the only issue presented to the Board was whether to overturn the Director's decision to revoke the certificate of occupancy. Furthermore, in filing its petition in the underlying cause, the School District only sought to set aside the Board's decision regarding the certificate of occupancy. The School District's petition does not contain any challenge to the license issued by the TABC. Because the School District's challenge related only to the Board's decision on the certificate of occupancy, we overrule Sarosh Management's issue.

### SCOPE OF REVOCATION

Finally, the Board contends the Director was not authorized to revoke the certificate of occupancy "*in toto*." The Board contends the business could be operated without the sale of alcoholic beverages; therefore, the Board did not abuse its discretion in overturning the Director's decision to revoke the certificate.

In Sarosh Management's application for the certificate of occupancy, it requested a certificate of occupancy for a business described as a "convenience store w/alcoholic beverages." As a result, the business for which the certificate of occupancy was issued was for a "convenience store w/alcoholic beverages sold." Because the issuance of this certificate of occupancy was in violation of the ordinances, the certificate of occupancy for the business as described was revoked. As the attorneys for the School District noted at the hearing before the trial court, nothing would preclude Sarosh Management from applying for a certificate of occupancy describing its business as a convenience store *without* alcoholic beverages sold.

### CONCLUSION

The trial court's judgment is affirmed.

Patricia O. Alvarez, Justice